**SOUTHERN SURETY CO. et al. v. ADAMS.
(No. 7437.)**

(Court of Civil Appeals of Texas. San Antonio. Dec. 5, 1925. Rehearing Denied Jan. 6, 1926.)

**1. Sequestration ⬦=12—Affidavits, setting forth a statutory ground, held sufficient to support writ, where not inconsistent with another defective ground.**

Where under Rev. St. 1911, art. 7095, alleged ground, under article 7094, subd. 2, for issuance of writ of sequestration, that defendant in possession would injure, illtreat, waste, destroy, and remove property in controversy, though duplicitous, was not inconsistent with further ground, under subdivision 5, that plaintiff had been ejected from possession of property by force and violence, the affidavit was sufficient to support the writ.

**2. Sequestration ⬦=12 — Affidavit, embracing ground for issuance of writ not inconsistent with those rejected for duplicity, held sufficient.**

Though an affidavit for sequestration embraces repugnant grounds, it will nevertheless support the writ, if it embraces an additional and efficient ground not inconsistent with those rejected because of duplicity.

**3. Sequestration ⬦=13—Writ not to be abated by controverting facts set up in affidavit.**

Writ of sequestration cannot be abated by contradicting truth of facts set up in affidavit, since validity of writ depends on compliance with statute in making the affidavit, not on truth of facts set up therein, and remedy for stating false grounds is in damages for wrongful issuance of the writ.

**4. Sequestration ⬦=12 — Court held to have acted within its discretion in directing substitution of correct seal to original affidavit for writ.**

Where certificate of officer taking affidavit to application for writ of sequestration was signed by county clerk, who attached seal of district court, the county and district clerk being the same person, the court acted within its discretion in directing substitution of county court's seal for seal attached.

**5. Sequestration ⬦=12 — Sequestration bond, made for an amount more than required, held not objectionable.**

Complaint against sufficiency of sequestration bond, on ground that it covered property not sued for in original petition, but which obligated plaintiff to make bond for an amount more than would have otherwise been required of him, *held* without merit.

**6. Contracts ⬦=98 — Rescission held proper, where release, being part of inducement of contract, was fraudulently filled in.**

Where execution of contract was induced partly by fraud in procuring execution and delivery of a release in which records of a different instrument than that intended were fraudulently inserted, plaintiff is entitled to rescission

and cancellation, and is not restricted to reformation of instrument.

**7. Evidence ⬦=434(7)—Pleading and proof by parol of agreement and fraudulent representations inducing it held properly admitted.**

Where entry into compromise agreement was induced by agreement to procure and deliver a deed of trust upon land falsely represented to be unincumbered, pleading and proof of agreement and fraud were properly admitted to show that compromise agreement and acceptance of deed were procured by fraud, and warranted rescission of agreement, though proof was by parol.

**8. Trial ⬦=351(2)—To obtain specific submission of case, request therefor must be made.**

If issues of fraud are thought to be too generally submitted, party must request a more specific submission of case and separation of particular elements of fraud; otherwise binding effect of findings cannot be questioned, in view of Rev. St. 1911, art. 1985.

**9. Sequestration ⬦=20—Word "fruits" in replevy bond held to include natural accession to live stock.**

In replevy bond granting obligors therein sequestered property, "with value of fruits, hire, and revenue thereof forthcoming," as required by Rev. St. 1911, art. 7110, the term "fruits" includes the natural accession to live stock.

**10. Sequestration ⬦=20—Submission of items of natural increase of cattle in general form, and refusal of specific issues on separate items, held not error.**

Where cattle were sequestered by plaintiff and replevied by defendant, submission by court of items of natural increase in general form, and refusal to submit specific issues on separate items, was not error, where itemization was not necessary to enable defendant to return property still retained, inasmuch as defendant had fully disposed of all the property, and findings on special issues by trial court on own motion are regarded as surplusage.

**11. Trial ⬦=349(1)—Judgment on special findings by court, not submitted to jury, erroneous, if special findings necessary thereto.**

Where property sequestered by plaintiff was replevied by defendant, if specific findings on each item of property had been essential to the judgment, it would have been reversible error for court, after refusing to submit special issues, to find facts thereon, and base judgment on such findings.

**12. Appeal and error ⬦=742(4)—Complaint as to exclusion of evidence overruled, where evidence not set out.**

Proposition of alleged error, failing to set out evidence claimed to have been erroneously excluded as required by rule 31, will be overruled.

**13. Sequestration ⬦=20—Where plaintiff recovers, damage is value of replevied property at time of trial.**

In sequestration, where defendant has replevied, and plaintiff recovers value of proper-

ty, the measure of damages is value of replevied property at time of trial.

**14. Sequestration ⊚⇒20—Verdict as to value of increase in animals, based on probable or normal increase, held not objectionable as speculative.**

In sequestration proceedings, where defendants replevied property, verdict as to value of increase of sheep and goats and yield of wool and mohair, based on testimony as to probable or normal increase after replevy, without direct testimony as to actual increase and yield, is not objectionable as speculative, where defendants offered no evidence, and, having exclusive possession of property after replevy, were in better position to show facts than plaintiff.

**15. Sequestration ⊚⇒20—Judgment for all property covered in replevy bond held not excessive as embracing more property than shown in sheriff's return.**

Judgment for all property covered in replevy bond, given in sequestration proceedings, *held* not to be excessive as embracing more property than shown in sheriff's return as having been seized by writ of sequestration, where defendant insisted that sequestration bond cover all property claimed by plaintiff, and did not prove that a less number than covered in replevy bond were surrendered to defendants.

**16. Sequestration ⊚⇒20—Evidence held to show plaintiff's interest in property sufficient to warrant his recovery for its loss.**

Evidence *held* to show that plaintiff's interest in part of property sequestered and replevied by defendants was such as to warrant his recovery for its loss.

**17. Sequestration ⊚⇒20 — Compromise agreement, set aside for fraud, held not to release surety on defendants' bond.**

In sequestration proceedings, where defendants replevied, a compromise agreement entered into between plaintiff and defendants, but set aside for fraud, is unavailable as a release of surety's liability on defendants' replevy bond.

**18. Trial ⊚⇒139(1)—Directed verdict properly refused, where evidence sufficient to take case to jury.**

Where evidence warranted submission of case to jury, it was not error to refuse a directed verdict for defendants.

Appeal from District Court, Gillespie County; J. H. McLean, Judge.

Action by J. Melvin Adams against the Southern Surety Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Barrett & Barrett, Douglas & Carter, and Henry Lee Taylor, all of San Antonio, for appellants.

N. T. Stubbs, of Mexia, H. H. Sagebiel and A. P. C. Petsch, both of Fredericksburg, for appellee.

SMITH, J. At the inception of this controversy, on June 22, 1922, appellee, J. Melvin Adams, owned certain sheep and goats, and other personal property, situated in Blanco county. On that date, appellant A. Glasscock purchased and took possession of the property. The jury found, upon sufficient evidence, that appellee was induced to make the sale and surrender possession to appellant by reason of the fraud of the latter. Appellee discovered the fraud alleged to have been practiced upon him by appellant, and forthwith instituted suit to set aside the sale and recover the possession of the property, which, in virtue of a writ of sequestration issued at the instance of Adams, was placed in the custody of the sheriff. Appellant Alex Glasscock and others, who had become his codefendants in the suit, replevied the property, and resumed possession thereof under a replevy bond executed by the defendants, as principals, and the Southern Surety Company and others, as sureties. This status was maintained until August 9, 1922, when the parties, other than the sureties, entered into a compromise agreement, by the terms of which appellants agreed to perform certain conditions and retain the personal property, and appellee agreed to dismiss the then pending suit. The suit was not dismissed, however, but upon the trial the jury found, upon sufficient evidence, that this agreement also was procured through the fraud of appellant Alex Glasscock.

Upon a trial the jury found, as above shown, that appellant Alex Glasscock was guilty of fraud in the particulars stated, and found the value of the property obtained by Glasscock from Adams in consequence of the fraud, together with the increase and revenues thereof. In response to this verdict, and to additional findings made by the court, the latter rendered judgment in favor of Adams against Glasscock and his associates for the sums of $9,500 and $6,659.81, and against the sureties on the replevy bond for $9,500, the amount of the bond, with judgment over in their favor against the principal defendants. All the defendants have appealed, and present their case in a joint brief.

[1] The first question presented in the appeal is that of the sufficiency of the sequestration bond through which the property in controversy was taken from appellants and placed in the custody of the sheriff. In his application for the writ of sequestration the plaintiff below alleged, as ground for the issuance of the writ, that he feared the defendants in possession would "injure, illtreat, waste, destroy, and remove" the property in controversy out of the limits of the county during the pendency of the suit, which allegations are made grounds for issuance of a writ under the provision of subdivision 2, art. 7094, R. S. 1911. It was further alleged that the plaintiff had been "ejected from the possession of the said property by force

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and violence," upon which allegation the writ may issue under subdivision 5 of the same article of the statute. It is contended by appellants that the court erred in overruling a motion to quash the writ of sequestration because the affidavit for the writ was fatally defective, in that the grounds upon which issuance was sought were inconsistent with each other.

It is perhaps true that under the authorities the affidavit was duplicitous and defective, in so far as it was set up therein as grounds for the issuance of the writ that the plaintiff feared that the defendants would injure, illtreat, waste, destroy, and remove the property in controversy from the county. Hopkins v. Nichols, 22 Tex. 207; Dunnenbaum v. Schram, 59 Tex. 281; Garner v. Burleson, 26 Tex. 348; Culbertson v. Cabeen, 29 Tex. 247; Carpenter v. Pridgen, 40 Tex. 33; Clark v. Elmendorf (Tex. Civ. App.) 78 S. W. 538. In the case last cited Chief Justice Fly said that—

"The court properly quashed the writ of sequestration because of duplicity in the affidavit. Appellee stated in the affidavit that she feared 'that the defendants will make use of such possession to waste or convert to their own use the fruits or revenues' produced by the property. These are evidently two distinct grounds for the issuance of the writ of sequestration; the first carrying with it the idea of destruction; the other, appropriation. They are not different phases of the same act and are not synonymous. The same rigid rules applied to attachments apply with equal force to writs of sequestration."

But the affidavit embraced another ground in addition to those just discussed, and that is that the plaintiff, owner and in possession of the property in controversy, "was ejected from the possession of said property by force and violence," which, under the provision of the fifth subdivision of article 7094, is made a separate ground for issuance of the writ of sequestration. It cannot be contended that any of the other grounds set up in the affidavit conflicted, or were inconsistent with, or repugnant to, this ground, the facts of which could rationally coexist with the facts constituting all other grounds alleged in the affidavit. It is expressly provided in article 7095 that the writ shall issue upon an affidavit which "shall set forth one or more of the causes named in" article 7094 "entitling him to the writ." And we conclude that where, as in this case, the affidavit sets forth any statutory ground not inconsistent with any other ground therein named, it will support a writ, even though other grounds, inconsistent with each other, are also embraced in the affidavit.

[2] We think the true rule should be that although an affidavit may embrace repugnant grounds, it will nevertheless support a writ, if it embraces an additional and efficient ground not inconsistent with those rejected because of duplicity. We so hold, and over-

rule appellants' sixth proposition, in which the question is raised.

[3] Appellants attack the sufficiency of the sequestration affidavit under the contention that the allegations that the plaintiff was ejected from possession of the property in dispute by force and violence was proven upon the trial of the case to be untrue. We overrule this point, which is embraced in appellants' first proposition. The validity of the writ cannot be tested by traversing the application therefor; nor can the truth of the affidavit be controverted for the purpose of abating the writ. The validity of the writ depends upon a compliance with the statute in making the affidavit, and not upon the truth of the facts set up therein. If the allegation that appellee was ejected from possession by force and violence was false, appellants' remedy was in damages for wrongful issuance of the writ, and not in abating the writ. Cloud v. Smith, 1 Tex. 611; Dwyer v. Testard, 65 Tex. 432; Gimbel v. Gomprecht, 89 Tex. 497, 35 S. W. 470. For like reasons we overrule appellants' second, twenty-fifth, and twenty-sixth propositions attacking the sufficiency of the affidavit.

In their third proposition appellants challenge the sufficiency of the sequestration bond upon the ground that said bond was not for an amount double the value of the property seized thereunder. We think a fair construction of the petition and application, which should be construed together for this purpose, refutes appellants' contention as to the recited value of the property. So do we overrule appellants' fourth proposition, in which they question the sufficiency of the verification of the application for the writ. We think the statute was substantially complied with in this respect.

[4] The certificate of the officer taking appellee's affidavit to the application for the writ of sequestration was signed by the *county clerk*, who attached the seal of the *district* court thereto. Albert Moursund was the county clerk, as well as district clerk, the offices being combined in one, and, although he signed his name as county clerk, he inadvertently attached the seal of the district court to the paper. Upon motion of appellee, the court, after hearing the facts, directed the clerk to substitute the seal of the county court for the seal of the district court, upon the original certificate, thus eliminating appellants' objection. Appellants complain of this action in their fifth proposition, which we overrule. The court acted well within his discretion in this matter. Cartwright v. Chabert, 3 Tex. 261, 49 Am. Dec. 742; May v. Ferrill, 22 Tex. 340.

[5] Appellants contend that the sequestration bond covered certain property not sued for in the original petition filed in the cause. They complain of this incident upon the sole ground that, because of the variation complained of, appellee, as plaintiff below, was

obliged to make his sequestration bond for $250 more than would have been required of him, had the allegations in his petition coincided with the obligations put upon him in his bond. We think the complaint is obviously without merit, and overrule appellants' seventh proposition. We also overrule appellants' eighth proposition, because we think the trial petition of the plaintiff below was good as against the general demurrer.

[6] As one of the elements of fraud resulting in the settlement agreement reached by the parties on August 9, 1922, appellee alleged and proved that appellant Alex Glasscock, through fraud and deceit, induced appellee to execute and deliver to him a certain release in which the record references were left in blank to be supplied by Glasscock from county records; that Glasscock fraudulently filled in these blanks with references to a different instrument than the one agreed upon. Appellants excepted to these allegations and objected to proof thereof, contending that appellee's remedy was not for rescission, but for reformation of the instrument. This particular transaction was but one of several through which Glasscock is shown to have deceived appellee into making the contract sought to be annulled. If Glasscock procured the execution and delivery of the instrument by fraud and put it to a fraudulent use not intended or contemplated by the parties, or agreed upon by them, then appellee was entitled to a rescission and cancellation of the instrument, and his remedy was not restricted to reformation, as appellants contend. We overrule the ninth proposition.

[7] For a like reason appellants' tenth proposition will be overruled. Glasscock, in inducing appellee to enter into the compromise agreement, agreed to procure and deliver to appellee a deed of trust upon land in Uvalde county, which he falsely represented to be unincumbered. When appellee discovered that the land was incumbered with a $50,000 lien, he repudiated the agreement and sought and obtained rescission on account of Glasscock's fraud. Appellants excepted to the pleading and objected to proof of the fraud, contending that appellee would not be permitted to discredit the written deed of trust by parol evidence of the true agreement between the parties. It was proper to permit the pleading and admit the evidence for the purpose of showing that the agreement and the acceptance of the deed of trust were procured through Glasscock's fraud, which showing warranted rescission. For like reasons we overrule appellants' eleventh, twelfth, and fifteenth propositions.

The trial court submitted the case as to fraud through two special issues:

"First. Was the defendant Alex Glasscock, on or about June 22, 1922, in procuring the purported sale to him by plaintiff, and the delivery to him, of the sheep and goats, and oth-er personal property in question, guilty of fraud, as is alleged in plaintiff's petition, as the term fraud is heretofore explained to you?

"Second. Was the defendant Alex Glasscock, on or about August 9, 1922, in procuring the purported compromise agreement in question, guilty of fraud, as is alleged in plaintiff's petition, as the term fraud is heretofore explained to you?"

[8] Objection is made by appellants to these two issues, on the ground that they were too general in their scope, allowed the jury too much latitude, and did not confine them to the specific acts relied upon by appellee to show the ultimate fact of fraud. It is true that as the basis of his charge of fraud appellee pleaded and proved Glasscock guilty of several specific representations, acts, and promises which induced appellee to enter into the two major agreements. The two issues were preceded in the court's charge by a full and clear definition of fraud and its constituent elements. If appellants were not satisfied with this character of submission, it devolved upon them to request a more specific submission of the case and a separation of the particular elements of fraud, failing in which they cannot now question the binding, even though general, effect of the resulting findings. Article 1985, R. S. 1911; Ward v. Etier, 113 Tex. 83, 251 S. W. 1028. We overrule appellants' thirteenth and fourteenth propositions.

[9] It was provided in the replevy bond that the obligors therein would have the sequestered property, "with the value of the fruits, hire, and revenue thereof forthcoming," etc. So far as applicable, this obligation was expressed in the language of the statute. Article 7110. In response to this provision and the finding of the jury as to value, judgment was rendered against the principals and sureties upon the replevy bond for the value of the natural increase of the live stock after surrender to appellants by the sheriff. Appellants challenge this element of the judgment upon the ground that they were not obligated in the bond to indemnify appellee for loss of this natural increase among the sheep and goats.

It is contended that the word "fruits," as used in the bond, was synonymous with "revenues," and did not encompass within its meaning the increase in the herds. In specifying the requisites in the bond, the statute does not use the word "increase," or any equivalent thereof, unless "fruits" was intended for that purpose. As the word "revenues" was expressly used, there could be no reason for inserting the word "fruits" to convey the identical meaning expressed in "revenues," and therefore such purpose should not be attributed to the Legislature. We conclude that natural accession to live stock is comprehended within the meaning of the words "fruits" of such stock, and that the Legislature had such meaning in mind when it used

the word in the connection stated. It is not conceivable that the Legislature intended to exclude increase of live stock from the operation of replevy bonds, while including rents, hire, and revenues from all other property, and we are of the opinion that it was intended that the word "fruits" should be given the construction here attributed to it. Appellants' sixteenth proposition is overruled.

[10] A very substantial portion of the judgment rendered against appellants embraced the item of natural increase of the sheep and goats during the two years between the date of the replevy and the date of trial, and the items of wool and mohair sheared from the animals during that period. The trial court submitted these items in such general form as to call for no finding of the jury upon the specific issues of the number of head of the increase among the animals, or the value per head of such increase, or the number of pounds of the wool or mohair crops for the two years, or the value of the crops per pound.

Appellants objected to the inclusion of these several issues in the general form submitted. When the court overruled this objection, appellants then went further and requested the court to submit the specific issues excluded from the main charge, but the court refused the request, and thus those issues were withheld from the jury. In entering judgment, however, the trial judge upon his own motion made his findings upon these very issues which he had withheld from the jury. Appellants vigorously complain of this procedure, step by step. After some hesitation we have concluded that the submission sufficiently embraced the ultimate issues to be determined, and that it was not error to refuse to submit those issues in more specific detail. Ordinarily, the rule in replevy cases is that the findings and judgment must segregate each item of property and fix its value, and, if that rule is applicable here, then undoubtedly the specific itemization was necessary to support the more general judgment. This purpose of fixing the value of each item in cases of replevin, however, is to enable defendants to return so much of the property as they still retain, and receive credit therefor upon the judgment rendered against them. But in this case it is undisputed that appellants had fully disposed of all the property, and none of it was tendered appellee. That being the case, the reason for requiring strict itemization is not present, and the rule becomes inapplicable.

[11] If the specific findings insisted upon by appellants had been essential to the judgment, it would have been reversible error for the court, after refusing to submit those issues, to find the facts thereon and base the judgment upon such findings. But as those issues were not necessary to the judgment, and are not inconsistent therewith, those findings will be treated as surplusage. We overrule appellants' seventeenth and twenty-ninth propositions.

[12] We also overrule appellants' eighteenth proposition, in which complaint is made of the exclusion of certain evidence. That evidence is not set out in the statement or argument under the proposition, in the manner specified in rule 31, that—

"When the error relates to * * * rejection of evidence, there shall be quoted the full substance of the evidence * * * rejected."

The only reference to the nature of the evidence excluded is embraced in the expression:

"Testimony of the expense incident to raising the increase and to producing the wool and mohair. * * *"

[13] In their nineteenth proposition appellants contend that the true measure of appellee's damages was the market value of the property at the time appellants disposed of it, as in case of conversion, whereas, the court fixed the measure upon the market value of the property at the time of the trial of the case. In sequestration cases, where the defendant has replevied and the plaintiff recovers the value of the property, the measure of damages is the value of the replevied property at the time of the trial. Norwood v. Bank, 92 Tex. 268, 48 S. W. 3; Watts v. Overstreet, 78 Tex. 571, 14 S. W. 704. The nineteenth proposition is accordingly overruled.

[14] The market value of the increase of the sheep and goats involved, and the yield of the wool and mohair therefrom, was established by the testimony of appellee and one of his witnesses as to the probable or normal increase in the animals, and their yield in wool and mohair after replevy. There was no direct testimony of the actual increase and yield. Appellants objected to this testimony, and the verdict based thereon, upon the ground that it was speculative, thus rendering the principals and sureties on the replevy bond insurers of the increase and yield. Appellants offered no evidence upon this or any other phase of the case, and now complain of the insufficiency and incompetency of appellee's evidence. We overrule these complaints. Appellants had exclusive possession of the property after replevy and until they disposed of it to third parties, and to that extent were in a better position to show the facts than appellee, who had been wrongfully deprived of the property by appellants, and had no means of ascertaining and presenting the true facts. If appellee's estimates of increase and values were excessive, appellants could no doubt have discredited them by proof of the actual facts, which were peculiarly within their knowledge, and unavailable to appellee. It appears from the record that appellee offered the best evidence of which the case was susceptible so far as his power went. Accordingly, appellants' twentieth proposition is overruled.

[15] Appellee alleged and proved that ap-

pellant Glasscock obtained possession of 385 sheep and 500 goats belonging to appellee. The writ of sequestration called for a levy upon the same property, the value of which was likewise covered by the sequestration bond given by appellee. The sheriff's return on the writ recited that, in pursuance thereof, he took "possession of the within described property," which was followed by a further recitation that—

"I want to further state that I was able to find of this property only 443 goats and 374 sheep of the within marks and brands, but that bond covers the entire number within enumerated."

In explanation of this notation, the sheriff testified that—

"I will state that I took a bond to cover all of them, because Mr. Glasscock said that he could find the other sheep; that he knew there was some sheep out; and that he thought he could get all of them rounded up. He told me he had all of the sheep and goats, and he gave the bond to cover the entire number."

The replevy bond given by appellants covered the property described in the writ of sequestration, including the 385 sheep and 500 goats, stating that said property, and all of it, had been seized by the sheriff under the writ of sequestration. Now appellants complain because judgment was rendered against them for all the property covered by the replevy bond, contending that the judgment was excessive, in that it embraced more property than was shown in the sheriff's return as having been seized under the writ of sequestration. No proof was offered by appellants that a less number than that covered by the replevy bond was surrendered to appellants thereunder, and, in the state of the record disclosed as above, we are not prepared to hold that the court erred in the manner or for the reasons complained of. The twenty-first, twenty-third, twenty-seventh, twenty-eighth, and thirtieth propositions will be overruled.

[16] Appellee alleged that he was the sole owner of the property in question, and recovered accordingly. Appellants challenge his right to recover as to 87 sheep and 50 goats, contending that those animals were not the property of appellee, but of Frank Nixon and Otto Kneese, respectively, who are otherwise strangers to the record. We think the evidence shows appellee's interest in the property to be such as to warrant his recovery for their loss, however. He testified that—

"The understanding between Mr. Kneese and Mr. Nixon as to the sheep and goats was that I was going to take them on shares, and I had the management and control of them, and I was to pay them afterwards for the stuff. I had the right to dispose of them at any time I wanted to. They authorized me to sell the stuff."

We overrule appellants' twenty-second proposition.

[17] It is contended by appellants in their twenty-fourth proposition that the compromise settlement of August 9, 1922, had the effect of releasing the sureties of liability upon the replevy bond. But the jury found that the compromise agreement was induced by the fraud of Alex Glasscock, and judgment was rendered setting aside that agreement, which thus becomes unavailable to the sureties as a means of escaping liability. The proposition is overruled.

[18] In their thirty-first and last proposition appellants set up the contention that the court should have directed a verdict in their favor, but, as the evidence warranted the submission of the case to the jury, we overrule the proposition.