SOUTHERN SURETY COMPANY ET AL. V. J. MELVIN ADAMS.

No. 4555. Decided December 20, 1930.
(34 S. W., 2d Series, 789.)

490

*Barrett & Barrett, Douglas & Carter,* and *Henry Lee Taylor,* for plaintiffs in error.

As an act of alleged fraud in the transaction of June 22, 1922 (the contract of sale), Adams contended that Glasscock represented to him that he had settled Adams' note at Schreiner Bank and had substituted himself for Adams' note at First State Bank, and that in reliance thereon he executed and delivered the bill of sale of June 22, 1922. The bill of sale expressly stipulates that Glasscock assumes those two debts. Plaintiff in error, therefore, by parol testimony, and in the absence of any deception as to the contents of the bill of sale so executed by plaintiff in error, seeks to destroy this recital of the bill of sale by orally disputing its terms to avail of a contention contradictory thereof.

One who signs a written instrument in ignorance of its contents is presumptively guilty of gross negligence, and the burden of proof rests on him to rebut the presumption. Albrecht v. Milwaukee & S. R. Co., 87 Wis., 105; Williams v. Rand, 30 S. W., 509; M. K. & T. v. Craig, 98 S. W., 907; White v. Hager, 248 S. W., 324; Case v. Manes, 254 S. W., 929; Bybee v. Embree, 135 S. W., 205; Elliott on Evidence (1904) Vol. 1, sec. 569; Mitchell v. Universal Life Ins. Co., 54 Ga., 289; Jones on Evidence (1913) Vol. 3, pp. 156, 159; Vansant v. Runyon, 44 S. W., 949 (Ky.); Kreshover v. Berger, 116 N. Y. S., 20; Butler v. Bank, 110 S. E., 501 (Ga.); Connell v. Newkirk, 111 S. E., 749 (Ga.); Brooks v. Mfg. Co., 115 S. E., 150 (Ga.); Murray v. Putman, 130 S. W., 631; Hurt v. Wallace, 49 S. W., 675; Kansas City v. Spies, 109 S. W., 432; Crouch v. Johnson, 27 S. W., 11; Outcult v. Barnes, 162 S. W., 631 (Mo.); Outcault v. Caruthersville, 230 S. W., 340 (Mo.); Colley v. National, 171 S. W., 663 (Mo.); Hartshorn v. Day, 19 Howard (U. S.), 211, 15 L. Ed., 605; G. H. & S. A. v. Kinnebrow, 7 Tex. Civ. 549, 27 S. W., 631; Shappiro v. Goldberg, 192 U. S., 232, 24 Sup. Ct. 259; Rector v. Evans, 288 S. W., 826.

The contention of Adams (on which the judgment herein is based in whole or in part) that he had a right to rescind the transaction of June 22, 1922, because the chattel mortgage delivered to him was not in conformity with the agreement calling for said chattel mortgage is untenable, for no misrepresentation accompanied or induced its acceptance and for the further reason that reformation

or specific performance and not rescission would afford the appropriate remedy for the real complaint. Parker v. Schrimsher, 172 S. W., 165; Arden v. Boone, 187 S. W., 995, 221 S. W., 265; Syles v. Culp, 138 S. W., 175; Luckenbach v. Thomas, 166 S. W., 99; Clack v. Wood, 14 S. W., 400; 37 S. W., 188; Spotswood v. LaFayette, 269 S. W., 514 (Ky.).

The writ of sequestration having issued upon the jurisdictional allegation that the property in question was taken from plaintiff by force and violence, and there being neither pleading nor proof sustaining jurisdiction for such issuance upon that ground, and the undisputed testimony showing that said property was taken with plaintiff's consent, and not by force and violence, the trial court erred in refusing the motion to quash the writ of sequestration on that ground. Harris v. Finberg, 46 Texas, 79; Terrazas v. Holmes, 225 S. W., 848.

The property having been given a value of $4,895.00, in the aggregate, in the application for writ of sequestration, and the sequestration bond having been made for only $9,500.00 (less than double the affixed value of the property), the writ of sequestration was unauthorized and the motion to quash on that ground should have been sustained. Rev. Stats., Art. 7097; Zachariae v. Swanson, 77 S. W., 627; McSweeney v. Ellerman, 155 S. W., 270.

The plaintiff having applied for the writ of sequestration upon the allegation that: "he is the sole owner of the hereinabove described property" (meaning the property involved in the suit); that it appearing that said allegation was untrue, the trial court erred in overruling the motion to quash the writ of sequestration upon that ground. Rev. Stats., Art. 7095; Myrick v. Futch, 206 S. W., 861; Cobbey on Replevin, sec. 559 (1900 Ed.); Ruling Case Law, Replevin, Vol. 23, p. 927; Traweek v. Pecos, 288 S. W., 843; Y. C. & S. F. Ry. Co. v. Bartlett, 75 S. W., 56.

The verdict and judgment are excessive in fixing the value of the sequestered sheep and goats at $6,202.50, and of their increase at $4,184.74, and of the wool and mohair produced at $6,648.06, because the sheriff only levied on 374 sheep and 443 goats, and the figures in question are based on 385 sheep and 500 goats (including 87 sheep owned by Frank Nixon and 50 goats owned by Otto Kneese). And the replevy bond was made more onerous than required by law for including property not levied on by the sheriff. Leverett v. Meeks, 29 Civ., 523, 68 S. W., 302; Elliott v. Long, 77 Texas, 467, 14 S. W., 145.

Appellee cannot contradict the contracts as written and thereby destroy those provisions by parol testimony that Glasscock agreed that said land was to be unincumbered. Harper v. Lott, 228 S. W., 188.

Compromise settlement having been made subsequent to the giving of the replevin bond and without the knowledge or consent of the sureties thereon, the same necessarily surrendered the replevied property to defendants under a new and different status and thereby released the sureties on the replevin bond.

Where, through no fault of his own, a contract does not speak the truth, a party may have it reformed to conform to the real understanding (but not where his own negligence entered into it). Strickel v. Brownfield, 250 S. W., 258; Wooters v. Ry., 54 Texas, 294; Commonwealth v. Barrington, 180 S. W., 936.

Although the expense incident to raising the increase and producing the wool and mohair is an indispensable item in ascertaining the fruits of the replevied property, since fruits and profits necessarily mean the clear gain, the trial court refused to permit testimony thereon (although appellants contend the burden of eliminating the element of expense was on appellee) and also refused to submit the matter of expense and entered judgment for appellee for the gross profits by approximation as estimated likely. Texas v. Lacour, 122 S. W., 424; I. & G. N. v. Pape, 73 Texas, 503, 11 S. W., 526; Ry. v. McGowan, 73 Texas, 362, 11 S. W., 336; Ry. v. Borsky, 2 Civ., 545, 21 S. W., 1012; City v. Tucker, 93 S. W., 233.

Where correct amount of judgment is not ascertainable from verdict, the cause must be remanded. G. C. & S. F. v. Culwell, 216 S. W., 457; Appeal and Error, sec. 1177–8; Blakely v. Duncan, 4 Texas, 184; Ratliff v. Gordon, 149 S. W., 196; Bowman v. Weber, 41 S. W., 493.

The (trial) court erred, after having refused the special requested issues of this defendant calling for a finding by the jury of the value of the several items of property involved, in making a finding on the several items of value, thereby depriving this defendant of the right of a jury trial thereon.

*N. T. Stubbs, H. H. Sagebiel,* and *A. P. C. Petsch,* for defendant in error.

The condition of the replevin bond is, "the defendants will not remove, etc. . . . and that they will have said property, with the value of the fruits, hire and revenue thereof, forthcoming to

abide the decision of the Court, or will pay the value thereof, and of the fruits, hire and revenue of the same, in case they shall be condemned so to do." R. S. (1911) Art. 7104; R. S. (1925) Art. 6850; Hurlbut v. Gainor, 103 S. W., 409; Words and Phrases, Vol. 4, pp. 2993 and 2994; Words and Phrases, Vol. 7, p. 6208. Plaintiff's right to recover was not limited to the value of the fruits and revenue of the sequestered property, less the expense of raising same; and the Court did not err in excluding the testimony as to cost and expense of raising the increase (the fruits and revenue) of the sheep and goats and of shearing, handling and marketing the wool and mohair. Coward v. Suffin, 185 S. W., 378.

· Where in a sequestration suit, involving personal property, sheep and goats, which were replevied by the defendant, it develops on the trial, from the undisputed testimony, that the property has been disposed of by the defendants and cannot be returned, the defendants are not entitled to a finding, by the jury, of the value of the several items of the property involved. Herder v. Schwab Clothing Co., 37 S. W., 784; Pipkin v. Tinch, 97 S. W., 1077; Herrera v. Marques, 182 S. W., 1143; Tripplett v. Hendricks, 212 S. W., 754.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

The statement of the case by the Court of Civil Appeals will suffice for the purpose of disposing of this writ of error. Such statement reads:

"At the inception of this controversy, on June 22, 1922, appellee J. Melvin Adams owned certain sheep and goats and other personal property, situated in Blanco County. On that date, appellant A. Glasscock purchased and took possession of the property. The jury found, upon sufficient evidence, that appellee was induced to make the sale and surrender possession to appellant by reason of the fraud of the latter. Appellee discovered the fraud alleged to have been practiced upon him by appellant, and forthwith instituted suit to set aside the sale and recover the possession of the property, which, in virtue of a writ of sequestration issued at the instance of Adams, was placed in the custody of the sheriff. Appellant Alex Glasscock and others, who had become his codefendants in the suit, replevied the property and resumed possession thereof under a replevy bond executed by the defendants as principals, and the Southern Surety Company and others as sureties. This status was maintained until August 9, 1922, when the parties, other than the sureties, entered into a compromise agreement, by the terms of

which appellants agreed to perform certain conditions and retain the personal property, and appellee agreed to dismiss the then pending suit. The suit was not dismissed, however, but upon the trial the jury found, upon sufficient evidence, that this agreement was also procured through the fraud of appellant Alex Glasscock.

"Upon a trial the jury found, as above shown, that appellant Alex Glasscock was guilty of fraud in the particulars stated, and found the value of the property obtained by Glasscock from Adams in consequence of the fraud, together with the increase and revenues thereof. In response to this verdict, and to additional findings made by the court, the latter rendered judgment in favor of Adams against Glasscock and his associates for the sums of $9,500 and $6,659.81, and against the sureties on the replevy bond for $9,500, the amount of the bond, with judgment over in their favor against the principal defendants." Southern Surety Co. v. Adams, 278 S. W., 944.

The Court of Civil Appeals affirmed the judgment of the District Court, 278 S. W., 943. The Supreme Court granted a writ of error to the sureties on the replevy bond, towit: Southern Surety Company, W. D. Glasscock and 4-Paw Glasscock. The cause, on writ of error, was submitted to each section of the Commission of Appeals, and on withdrawal from both sections, to the Supreme Court. The sections of the Commission concurred in recommending the affirmance of the judgments of the District Court and Court of Civil Appeals, after dismissal of the writ of error as to 4-Paw Glasscock, and we have finally concluded there is no reversible error in the action of either of the lower courts.

We are satisfied that the opinion of Presiding Judge Short properly disposes of all questions presented to us and it is therefore adopted, save in so far as we shall modify or enlarge that opinion by what is now written.

By their sixth proposition the plaintiffs in error complained that the judgment was excessive because rendered against the sureties on the replevy bond for the value of more sheep and goats than were included in the sheriff's levy of the writ of sequestration. In support of the proposition, it is urged that the judgment covers the value of 500 goats and 385 sheep, while the levy was on 443 goats and 374 sheep. The writ of sequestration commanded the sheriff to seize 500 goats and 385 sheep. The sheriff's return was to the effect that he executed the writ by taking into his possession, at the Glasscock ranch, the property described in the writ of sequestra-

tion, adding that he "was able to find of this property only 443 goats and 374 sheep," but that the defendants had replevied the property described in the sequestration writ. The replevy bond recited that the sheriff took into his possession under the writ of sequestration the entire 500 goats and 385 sheep and the defendants and their sureties acknowledged themselves bound to pay plaintiff $9,500, conditioned that the defendants would not waste, ill-treat, injure, destroy, sell or dispose of the same, and that they would have all said property, with the value of the fruits, hire and revenue thereof, forthcoming to abide the decision of the Court, or would pay the value thereof, and of the fruits, hire or revenue of the same, in case they should be condemned so to do. The sheriff testified that he took the replevy bond to cover all the animals described in the writ of sequestration because when the bond was tendered him, covering all the animals, the defendant A. Glasscock admitted he had all the sheep and goats, declaring he could find those not then present.

Where defendants in sequestration and their sureties represent to the officer commanded to sequester certain property that a defendant has such property in his possession and voluntarily tender a bond to account for such property, or its value, with the value of the fruits, hire or revenue thereof, to abide the decision of the court, such defendants and sureties are estopped to question either that a proper levy was made of the writ of sequestration or that the property was delivered over by the sheriff to the defendants. Clearly it was the sheriff's duty to seize all the property described in the writ of sequestration. Just as clearly could the defendants in sequestration waive the actual seizure of part of the property actually in a defendant's hands. Where the parties to a forthcoming bond have waived the seizure of part of the property described in the sequestration writ by tendering a bond acknowledging the principal's possession thereof and promising to have same forthcoming, with its fruits, etc., and have thereby deprived the plaintiff of his legal right to a perfect execution of his sequestration writ, such parties will not be heard to question either the officer's levy or the repossession by defendants of all the property replevied. Litigants will not be allowed to pervert processes of the court and statutory remedies into means of defrauding their adversaries. Hence, the rule is as stated by Mr. Freeman: "Sound public policy requires that persons who are parties to such bonds, either as principals or sureties, should not, after lulling the plaintiff or the levying officer

into inaction and a sense of security, be permitted, subsequently, to urge, for the purpose of avoiding their bonds, any irregularity in any of the prior writs or proceedings, except those which are incapable of waiver." 2 Freeman on Executions (3rd Ed.) sec. 264, pp. 1485, 1486; Portis v. Parker, 8 Texas, 23.

The compromise settlement between the plaintiff and defendants, without the consent of the sureties, would have released the sureties from further liability on the replevy bond, but for the court's finding, on appropriate pleadings and evidence, that the settlement was induced by the defendants' fraud. This question is satisfactorily discussed and determined in the case of Red River National Bank v. Bray, 105 Texas, 315–317, where the court, speaking of the kind of agreement by the principal which will discharge the obligation of the surety declared:

"It does not mean an agreement that the principal has induced by his deceit and fraud, and is therefore wanting in that integrity which the law demands in contracts that it will enforce. It does not mean an agreement which is the result of the principal's artifice, bearing the semblance of a crafty trick and actuated by a dishonest design, under which the creditor is beguiled into a position where his forbearance, thus influenced, is turned against him, and is availed of to destroy the security of his debt. The law will not so protect the fruits of the fraud of the principal, or so penalize the magnanimity of the creditor. Such an agreement is not binding upon the creditor. If it is not binding upon the creditor, it is not such an agreement as will operate to the disadvantage of the surety or the prejudice of his rights. * * * It is not necessary that the agreement of extension be void and not merely voidable, as is held by the learned judge writing the opinion of the Court of Civil Appeals. * * * If the fraud of the principal is sufficient to absolve the creditor from an agreement induced by it, as between himself and the principal, it ought to be sufficient, and we think it is, to prevent the surety from profiting by it to the destruction of the creditor's security."

It is urged by plaintiffs in error that the trial court erred in submitting issues calling for determination of the value of the increase and of the mohair and wool, without requiring findings of the numbers of the increase and of the quantities of mohair and wool, and in refusing to submit special issues calling for finding on such numbers and quantities, with the value of each item of property replevied. The petition for writ of error, at page 51,

states as an established fact that "Glasscock disposed of the sheep and goats on August 16, 1922." Plaintiffs in error make no attack on the conclusion of the trial court, reading as follows: "And the Court further finds, from the undisputed evidence, that on or about the 16th day of August, A. D. 1922, the defendants Alex Glasscock, L. Glasscock DeLoach, and D. Glasscock sold and delivered the hereinabove described sheep and goats to the defendant, W. D. Glasscock, by bill of sale, bearing said date, and that said property has since been disposed of and cannot be returned to the plaintiff." Assuming, as we must on this writ of error, that the undisputed evidence established the impossibility of returning any of the replevied animals, because of their conversion many years before by and under principals in the replevy bond, there was but one appropriate, controverted issue of fact as to the fruits of the animals, whether from increase or clip, and that involved only the value of such fruits, and hence the trial court correctly submitted such fact issue, and correctly refused the requested issues. It has never been proper practice to seek by means of a special verdict to ascertain the evidence by which facts are established but instead the province of a special verdict is to find the ultimate facts established by the evidence from which rights may be determined. Just as a party is required to plead facts—and not his evidence to establish facts—so a special verdict is to determine facts and not to recite evidence warranting the finding of facts. It is always improper to submit to a jury questions about the evidence on which their verdict is rested. Emberlin v. Wichita Falls, R. & F. W. Ry. Co., 267 S. W., 464; Texas City Trans. Co. v. Winters, 222 S. W., 542; Silliman v. Gano, 90 Texas, 645; Fox v. Dallas Hotel Co., 111 Texas, 475; Merchants Ice Co. v. Scott & Dodson, 186 S. W., 422 (6).

A different question would be presented if we had a case where the impossibility of return of the replevied property was not shown by uncontroverted evidence. There the right to return all or some of the replevied property, in satisfaction of the judgment in whole or in part, would be involved, as in the case relied on by plaintiffs in error such as Blakely v. Duncan, 4 Texas, 184. Because courts do not enter futile decrees, they will not undertake to assess values of separate articles replevied by defendants when such assessment could accomplish nothing in the face of impossibility of return of any of the articles. Cole v. Crawford, 69 Texas, 127; Pipkin v. Tinch, 97 S. W., 1078; Hill v. Armstrong Mfg. Co., 275 S. W., 1087.

We are urged to reverse the judgments of the courts below because no allowance was made therein for the necessary expenses of

caring for the kids and lambs and of clipping and marketing the wool and mohair. It is argued that the rule would be unconscionable which would require parties to a replevy bond in sequestration to account for more than net fruits or profits. The opinion of Judge Short contains the conclusion that plaintiffs in error would have been entitled to a counter-claim against defendant in error for these expenses, had such counter-claim been plead. However, it is only just to Judge Short and Section B of the Commission of Appeals to state that subsequent reconsideration led them to adopt the view that a proper construction of Article 6850 of the Revised Statutes requires the makers of the replevy bond for personal property to account for the property and the value of its fruits, without diminution for expenses.

The statutes require parties seeking to retain possession of sequestered personal property, and their sureties, to obligate themselves to have the property forthcoming with the value of its fruits, hire, or revenue, to abide the court's decision, or to pay the value of the property and of the fruits, hire, or revenue of the same, in case the court so adjudges. The word "fruits" in its ordinary signification includes the increase and the clip of replevied goats and sheep. Webster states that the word includes "offspring," and "that which is produced." So, if the obligation of the bond in conformity to the statute is attempted to be met by the production of replevied goats and sheep, not only must the goats and sheep be returned, but the obligors in the bond must also account for the value of the offspring, wool, and mohair of the goats and sheep. If the replevied goats and sheep cannot be produced, the value to be accounted for is the value of the goats and sheep and of their offspring, wool, and mohair. As the word "value" is used in the statutes and bond, it obviously means the proper price which the replevied property and its fruits would bring. The words of the statute and bond provide for no deduction from such value for expenses in handling the replevied property or its fruits, and the courts have no warrant for allowing same.

The judgment in this case accords with the command of article 6852 of the Revised Statutes that:

"In case the suit is decided against the defendant, final judgment shall be entered against all the obligors in such bond, jointly and severally, for the value of the property replevied, and the value of the fruits, hire, revenue or rent thereof as the case may be; and the value of the property replevied shall be proven either as of the time

of the execution of the replevy bond or as of the time of the trial, as the plaintiff may elect."

Much of what might seem harshness in results from thus interpreting the statutes disappears when you consider the nature of these proceedings. The suit puts in issue the defendant's title. His possession is disturbed, before judgment, by the officer executing the writ of sequestration, only after his rights have been fully safeguarded by the bond for sequestration. It is only when he is not satisfied with the protection afforded by the bond, and demands immediate possession, before the plaintiff's title can be adjudicated, that he need give the replevy bond. When he does elect to give it, he has full knowledge of its plain obligations. By conserving the property and the value of its fruits he may use same to discharge a judgment against him. If, as in this case, he voluntarily disposes of the property which the plaintiff has sought to preserve by his suit and sequestration, he cannot greatly complain, because after being adjudged without rightful claim to the property, he is compelled to restore to the true owner the full value of the property and its fruits. If the conditions of the bond, under the statutes, be unduly harsh, the remedy comes within the legislative and not within the judicial power.

Finding no reversible error in the judgments of the District Court and Court of Civil Appeals, the same are hereby affirmed.

Mr. Presiding Judge SHORT delivered the opinion of the Commission of Appeals, Section B.

Southern Surety Company, 4-Paw Glasscock, and W. D. Glasscock, plaintiffs in error, are sureties on a replevin bond executed by them, with Alex Glasscock and the Deloachs as principals, in a sequestration proceeding ancillary to a suit wherein Melvin Adams was plaintiff and the principals were defendants. The bond provided for the forthcoming, etc., of sheep and goats and their fruits, etc. Subsequent to execution of the bond and before trial the sequestered property was sold by the principals-defendants to W. D. Glasscock. After the sale Adams filed an amended petition wherein he alleged wrongful conversion of the property by W. D. Glasscock and wherein recovery was sought against him, in common with the original defendants, for the property or its value. Recovery upon the bond was sought against the original defendants, and W. D. Glasscock and the other sureties. Upon trial with a jury judgment was rendered against all of the principals and sureties for the sum of $9,500.00, the penal amount of the bond, and against the original defendants for the additional sum of $6,659.81,—the value of

the replevied and converted property having been fixed at $16,159.81. The judgment also decreed Adams to have had title and right to possession of the property, and allowed the original defendants the statutory ten-days' period within which to redeliver the property to the sheriff. Upon appeal prosecuted (in form) by all parties the judgment was affirmed by the honorable Court of Civil Appeals (278 S. W., 943), and to the opinion of affirmance we refer for a more complete statement of the case.

The original defendants did not file application for writ of error, and as to them the judgment has become final.

Writ of error was allowed upon the application of the persons who are sureties principally upon assignments hereinafter discussed.

4-Paw Glasscock, who is one of the plaintiffs in error, did not file a motion for new trial or assignments of error in the trial court and did not file an appeal bond, error bond or supersedeas bond. The judgment became and remains final as to him, and neither the Court of Civil Appeals nor the Supreme Court rightly acquired jurisdiction of the cause as to him. Consequently, the writ of error as to him must be dismissed.

The case as to W. D. Glasscock may be disposed of without particular reference to the questions now undertaken to be presented by him. He was sued as for conversion of the property, and the record exhibits unquestionable grounds for his liability for conversion. The measure of that liability was fixed by the jury verdict at $16,159.81; yet judgment was rendered against him for only $9,500.00. This was due, of course, to the mistaken idea of his liability solely as surety. Adams does not complain of the error, nor does he present any contention that he is not liable in conversion. The questions now presented relate only to errors supposed to have been committed against him in the capacity of surety. It follows that the errors assigned, if errors in fact, are harmless in so far as his rights are concerned, and the judgment as to him should be affirmed.

The only remaining plaintiff in error, the Southern Surety Company, presents in its application for the writ of error fourteen propositions in support of its contention that the judgment rendered against it as surety of the original defendant Alex Glasscock should not be sustained, but that the judgments heretofore rendered against it as surety should at least be reversed and the cause remanded for another trial. Some of these propositions relate to the same subject matter and therefore can be discussed together. Others will be taken up separately.

502

The trial court gave a very full and complete instruction to the jury as to the necessary elements of fraud and of the duty of the original plaintiff to establish the material allegations in his petition on that subject. While a part of this instruction is inaccurate, yet the inaccuracy resulted in placing a burden upon the original plaintiff not authorized by the law, and consequently conferred a favor upon the plaintiff in error to that extent. No objection to this instruction was interposed by either party. This instruction is as follows:

"Some of the questions submitted to you will require the determination of issues relative to fraud, as well as others; and, in order to assist you in determining the issues, you are now instructed in the law applicable to the case as follows:

"1. Fraud is a question of fact to be determined by the jury. Before fraud can be found to exist it must be made to appear by a preponderance of the credible evidence: (1) that the party charged made representations to the complaining party relative to existing facts, and not merely opinions; (2) that such representations were material; (3) that such representations were false; (4) that such representations were known to be false by the party so making them, or were recklessly made without knowledge of their truth or falsity; (5) that the complaining party was ignorant of the subject matter of the representations and believed them to be true; that the party charged made such representations for the purpose of being acted upon by the person complaining; (7) that such representations were relied upon by the complaining party, and constituted a material inducement for him to do the acts alleged to have resulted in his injury. All of these elements are essential to constitute fraud, and if any one of them is wanting, fraud is not established.

"2. You are further instructed that fraud is never presumed, but must be proven by clear and satisfactory evidence. In this case the burden rests upon the plaintiff to establish the fraudulent acts, and representations alleged by him, by a preponderance of the credible evidence, and unless he has done so, you should, in answering the questions hereinafter submitted to you, find against the existence of fraud.

"3. Every person is under the duty of exercising ordinary care in the protection of his own interests; and, in this case, if false representations were made to plaintiff, and he knew them to be false, or could, by the use of ordinary care, have ascertained their falsity, then he would not be justified in acting upon such representations,

and one of the essential elements would be wanting, and fraud, would not exist.

"4. In this connection, you are further advised that 'ordinary care,' as that term is used in this charge, is that degree of care which an ordinarily prudent person would use under the same or similar circumstances."

After giving this instruction the court submitted two questions on the subject of fraud, both of which were answered in the affirmative. These questions are as follows:

"First: Was the defendant, Alex Glasscock, on or about June 22, 1922, in procuring the purported sale to him by plaintiff, and the delivery to him, of the sheep and goats, and other personal property in question, guilty of fraud, as is alleged in plaintiffs' petition, as the term fraud is heretofore explained to you?

"Second: Was the defendant, Alex Glasscock, on or about August 9, 1922, in procuring the purported compromise agreement in question, guilty of fraud, as· is alleged in plaintiffs' petition, as the term fraud is heretofore explained to you?"

With the record in this condition, the plaintiff in error in its proposition No. 1 and its proposition No. 2 submits that the original plaintiff could not dispute a written recital in the bill of sale executed by the plaintiff to Glasscock by oral testimony, nor could he dispute the written statement in the mortgage which Glasscock executed and delivered to the original plaintiff by oral testimony, since to do so would violate the legal principle that the contents of a written instrument can not be disputed by oral evidence, and because, as contended by the plaintiff in error, the effect of the testimony on these two particular subjects did not attack these instruments so as to bring this oral testimony within the exception to that rule, it appearing that both instruments were read by the original plaintiff under such circumstances that he had every opportunity to become acquainted with their contents. In support of its contention, the plaintiff in error cites many authorities to the effect that when a man knowingly and without constraint delivers to another for a valuable consideration his obligation in writing, he can not be heard to say afterwards that he was deceived, and that by reason thereof he did not know the purport of such instrument; and to the further effect that where a written contract, which a party seeks to rescind on the ground of oral fraudulent representations of the other party, contains provisions negativing the claim that the representations were relied on, or contains other representations on the same subject in-

consistent with the alleged oral representations, the oral representations are inadmissible as varying the contract, citing Williams v. Rand, 30 S. W., 509; M., K. & T. Ry. Co. v. Craig, 98 S. W., 907; White v. Hager, 248 S. W., 324; 22 C. J., p. 1217, among other authorities.

We agree to the principles of law announced in these authorities, but do not sustain these propositions submitted by the plaintiff in error because it is apparent from the record that under the instructions given by the trial judge to the jury and the testimony found in the statement of facts, the testimony was admissible on these subjects for the purpose of enabling the jury to answer intelligently question No. 1 as well as question No. 2, both of which taken together comprised the two transactions made up of several incidents, among which was the execution of the bill of sale by the original plaintiff, and upon the other hand the execution of the mortgage by the original defendants. These incidents were specifically pleaded as constituting a part of the fraud upon which the original plaintiff relied to recover possession of his property; and in this connection it may be stated that this suit was not a suit for damages upon conversion, but was a suit to recover specific property based upon fraud in procuring the possession of the property. After the fraud had been discovered and suit had been instituted, the original defendants procured an agreement to dismiss this suit by fraudulent representations, and the original plaintiff afterwards amended its petition for the purpose of setting up this fraud and having the court set aside this agreement to dismiss the suit. The first transaction took place on June 22, 1922, and the second transaction occurred on August 9, 1922.

Plaintiff in error's third proposition is, that the original plaintiff procured the issuance of a writ of sequestration upon two grounds, one of which was not supported by any testimony, and the other was duplicitous. The Court of Civil Appeals held that the application for the writ was duplicitous as to one of the grounds, but was sufficient as to the other, though there was no proof as to the existence of this other ground. Assuming for the purposes of this case only that the plaintiff in error as surety had the right to file this motion to quash the writ of sequestration or to take advantage of any error of the court in failing to sustain a similar motion filed by the original defendants, we nevertheless think that this proposition is untenable as presented. The duplicitous part of the application should be treated as surplusage and the fact that the other ground

was not supported by evidence could not be taken advantage of by a motion to quash. The defendant's remedy was by a plea in reconvention for damages based upon the falsity of the statement and the consequent damages flowing therefrom. Nothing of this kind occurs in the record.

Plaintiff in error's fourth proposition is based upon a misstatement of the record as we read it. It is claimed that the property sequestered was valued at $4,895.00 and the bond given was for $9,500.00, and was therefore less than double the fixed value of the property. The fixed value of the property was $4,720.00 and not $4,895.00. The error into which the plaintiff in error has fallen grows out of the fact that it assumes there were 550 of the goats when there were only 500. These fifty excess goats were valued at $175.00 by plaintiff in error, and hence the mistake.

Plaintiff in error's fifth proposition is based upon the contention that the original plaintiff in his application for the writ of sequestration stated he was the sole owner of the property and that the testimony showed this was untrue. The Court of Civil Appeals has found that this allegation was true in that the original plaintiff was the owner of the property, and an examination of the statement of facts shows that there is sufficient testimony to support this finding of fact. Such being the state of the record, we are bound thereby.

Plaintiff in error's sixth proposition is based upon the fact that the sheriff did not actually take into possession all the property for which the plaintiff in error became liable as surety on the replevy bond and that the part of the property actually seized did not belong to the original plaintiff. It appears that the property was only partially gathered by the sheriff and that Alex Glasscock, one of the original defendants, stated that the balance of it was about the premises and that he would replevy all of it, which he did. It does not appear that the sheriff was negligent in his duties in assembling the property by taking actual possession of it, nor does it appear that the original defendants suffered any damage by this failure of the sheriff to subject all of the property to actual possession. On the contrary, it appears that the reason why the sheriff did not seize all the property originated in the offer of Glasscock to replevy all of it without requiring the sheriff to reduce all of it into his possession. We think the defendant in the writ is estopped by his conduct from claiming any advantage from this failure of the sheriff to reduce all of the property into actual possession. 34 Cyc. 1402.

Plaintiff in error's seventh proposition relates to the offer of the original plaintiff of oral testimony, the effect of which was to avoid

the written compromise agreement made with Glasscock, the original defendant, on August 9, 1922, to dismiss the suit for the property. What we have said with reference to propositions 1 and 2 relates to this proposition, and we deem further discussion unnecessary, beyond the statement that fraud is always provable by any legitimate oral testimony tending to impair the integrity of the written instrument assailed. Otherwise, after the execution and delivery of a written instrument secured by fraud it could never be assailed successfully.

It is also contended in this connection that the plaintiff in error was not a party to this agreement and was not consulted by any one with reference to the making of it, and that the agreement having been made, it was entitled to all the benefits arising therefrom, the answer to which is, that the jury has found that the agreement was not a valid one and being invalid it could not release the plaintiff in error from its obligation assumed when it signed the replevy bond.

Plaintiff in error's eighth proposition relates to the same subject in a different way. It seems there was a general demurrer to plaintiff's petition presented on the ground that it appeared from its allegations that the suit out of which the sequestration proceedings issued and the replevy bond had been given was settled without any allegation of fact disclosing any fraud in connection with the making of the settlement. This demurrer was overruled and properly so, since there were allegations of fact alleging fraud in connection with the attempted making of the settlement.

Plaintiff in error's ninth proposition relates to the action of the court in permitting oral testimony to be introduced tending to show the fraud of Alex Glasscock in certain particulars relating to the agreement of June 22, 1922. The general instructions of the court to the jury on the subject of fraud were sufficient to justify the presentation of the matter of fraud in question No. 1 relating to the transaction of June 22, and in question No. 2 relating to the transaction of August 9.

Proposition No. 11 relates to the same subject matter and needs no further discussion, as does proposition No. 12.

Proposition No. 14 is sustained. It seems that the trial judge after having refused the special requested issues calling for a finding by the jury of the value of several items of property involved after the verdict had been returned proceeded to ascertain and find this value himself. This question of value was one of fact peculiarly within the province of the jury to determine, and the judge had no authority to act as he did. However, it further appears from

the judgment that the original defendants by their own voluntary act had so disposed of the property that it could not be returned. This finding of fact renders this error committed by the trial judge immaterial, since the object of finding the value of each item of property was to enable the defendants to return the property item by item in whole or in part and to thus obtain a credit upon the judgment to the extent of the value of the items of property returned. Pipkin v. Tinch, 97 S. W., 1077; Avery v. Popper, 45 S. W., 951.

In proposition 10 the plaintiff in error asserts that the judgment for defendant in error not only compensates him for the value of the original property, but also gives to him the gross profits without any testimony showing the expense incident to growing the increase and producing the wool and mohair. The plaintiff in error offered testimony tending to show what this expense would be, but the court refused to allow the testimony to be introduced. A bill of exception was properly reserved and the point is presented whether the plaintiff in error or its principal was entitled to show in the absence of pleading what this expense had been, which was necessary and which in fact had been incurred by the original defendants in growing the increase and in producing the wool and mohair for the value of which the defendant in error was allowed a recovery.

Article 6849, Revised Statutes of 1925, provides that the defendant, where property has been sequestered, shall have the right to *retain* possession of the same by delivering to the officer executing it a bond payable to the plaintiff in an amount not less than double the value of the property to be replevied.

Article 6850 of the same statutes provides in cases where the property involved is personal that the condition of the bond shall be among other things that the defendant will not do the things alleged in the plaintiff's affidavit he was about to do and that "he will have such property with the value of the fruits, hire, or revenue thereof, forthcoming to abide the decision of the court, or that he will pay the value thereof and of the fruits, hire or revenue of the same in case he shall be condemned so to do."

Article 6851 provides in a case where the property is real estate that the condition of the bond shall be "that the defendant will not injure the property, and that he will pay the value of the rents of the same in case he shall be condemned so to do." This last named Article has been often construed by the courts. Taylor v. Flint, 67 S. W., 347; I-G. N. Ry. Co. v. Pape, 73 Texas, 503; Gulf, Colorado &

Sante Fe Ry. Co. v. McGowen, 74 Texas, 362. The value of the rents as used in that Article according to the construction placed upon that phrase means the rents actually received if in excess of the market value. The value of the property for which the defendant in a sequestration suit is liable to pay is that value which the property has at the time of the trial. Luedke v. Hooper, 95 Texas, 172; Watts v. Overstreet, 78 Texas, 571.

The original property in this case consisted principally of a certain number of goats and a certain number of sheep. The original suit was to recover this specific property, the possession of which was fraudulently obtained on June 22, 1922. The property was replevied June 30, 1922. The jury found the market value of the original sheep, the possession of which was retained by the defendant, to be $3,900.00 and the value of the original goats to be $2302.50. It further found the value of the increase of the sheep to be $1,800.00 and of the increase of the goats to be $1,384.75. It found the market value of the wool grown on the sheep to be $3,195.00 and the value of the mohair grown on the goats to be $3,453.06. The value of the other personal property was as originally estimated in the replevy bond and these several amounts made up the aggregate value of the judgment rendered against the principal defendants. The judgment against the plaintiff in error was only for the amount of the bond which was $9,500.00.

The original plaintiff plead and proved according to the findings of fact by the Court of Civil Appeals what the value of the original herd of sheep and the original herd of goats was, what the increase of each was, and what the value of the wool grown on the sheep and the value of the mohair grown on the goats was. The original defendants did not plead what the expense was of growing the increase and of producing the wool and the mohair. The defendant in error contended that he had the right to introduce testimony to show this value, and the assignment of error in the application for the writ of error brings this question before the Supreme Court for disposition.

It has been seen that we have two statutes stating the conditions of a replevy bond. One refers to personal property and the other to real estate. One of the conditions of the bond given in this case was that the defendant in the sequestration writ would have the property forthcoming to abide the decision of the court or that he would pay the value thereof. In this case the defendant did not have the property and could not have had it, and so this item of the

judgment is practically unchallenged. Another condition of the bond is that the defendant in the writ will pay the value of the fruits, hire, or revenue of the property. There is no testimony as to the value of the hire of this property. The word "revenue" has been defined to be "that which returns or comes back from an investment; the annual rents, profits, interest, or issues of any species of property, real or personal. 34 Cyc., 1691. However, in the absence of qualifying words or circumstances implying an intention to employ the term in a different sense, the word "revenue" is usually confined to the public income, that is, taxation. So we conclude that the word "revenue" as used in this statute is synonymous with the meaning of the word "rent" as applicable to personal property. The record does not disclose any basis for a finding by the jury that these goats and sheep had any rental value within the meaning of the word "revenue." The verdict of the jury and the judgment based thereon must, therefore, be supported, if at all, by the meaning of the word "fruits." This word is thus defined, among other definitions, by Mr. Webster to be "the produce of animals; offspring; young; as, the fruit of the womb, of the loins, of the body. That which is produced; the effect of consequence of outgrowth; issue, consequence, advantage; profit; benefit; as, the fruits of labor." It is evident from this definition thus quoted that the value of fruits means the produce of the animals, including the offspring of them, as well as the wool and mohair produced during the time the original defendants had these animals in their possession, and having proven the value of these fruits at the time of the trial, he was entitled to have a judgment against the original defendants for this value and against the surety to the extent of its bond for a similar value, unless there had been pleaded and proven a counter-claim or set-off involving the expense which the defendant was reasonably compelled to incur while these fruits were being produced.

Article 2014 provides: "That a defendant who desires to prove a counter-claim or set-off shall file with his plea an account stating distinctly the nature of such payment, counter-claim or set off and the several items thereof." Article 2017 provides where the plaintiff's cause of action is a claim for uncertain damages founded on a tort or breach of covenant, the defendant shall not be permitted to set off any debt due him by the plaintiff except that the defendant may plead in set-off any counter-claim founded on a cause of action arising out of or incident to, or connected with, the plaintiff's cause of action.

Under these Articles of the statute it is evident that the claim sought to be proven by the plaintiff in error by virtue of his interest in the subject matter, under the pleadings and proof in this case, was a counter-claim founded on a cause of action arising out of or incident to, or connected with, the original plaintiff's cause of action. But to be permitted to do so he must have complied with the rules of pleading as provided in the statutes above quoted. This he did not do. The testimony offered was without any support in the pleadings. Moreover, the testimony offered was of that character peculiarly within the knowledge of the original defendants, the tort feasors in this case. Manifestly the original plaintiff could not have alleged in the manner the statute required these matters to be allowed, the facts necessary to form a basis for the introduction of testimony. The property was not in his possession, nor was his relation thereto such as that he could have informed himself of these expenses. Evidently the original defendants or some one authorized to represent them only had this information. The expense of growing the increase of these animals and of producing the wool and the mohair under the facts in this case form a legitimate basis for a counter-claim, and under proper pleadings and proof this counter-claim should have been allowed. There being neither pleading nor proof as to this expense, and the original plaintiff having established the value of the fruits of these animals at the time of the trial, he was entitled to recover a judgment therefor.

Proposition No. 13 challenges the action of the trial court in submitting the market value of the increase and of the wool and mohair without calling for the number of head and yield. It has been seen that the court found that the original defendants had caused these animals to be dispersed and placed in the hands of various and sundry unknown parties, and it further appears that the plaintiff was relegated to the necessity of proving by expert testimony the number and market value of the increase of the sheep and of the goats as well as of the wool and mohair, thus demonstrating that the original plaintiff used the best testimony available to him, and that this condition was brought about by the wrongful acts of the original defendants. We do not think under the circumstances that the jury should have been required to have found the number and the amount of the yield of the sheep and of the goats, but that all that the defendants could require under the situation was the value of the original quantity of animals and the value of the increase in sheep and the value of the increase in goats and the value

of the wool produced from the sheep and the value of the mohair produced from the goats.

We recommend that the writ of error in so far as granted upon the application of 4-Paw Glasscock be dismissed for want of jurisdiction and that the judgment of the Court of Civil Appeals be affirmed as against Southern Surety Company and W. D. Glasscock.