## SCALES v. LINDSAY.

### No. 10891.

Court of Civil Appeals of Texas. Dallas.
Oct. 31, 1931.

Rehearing Denied Nov. 28, 1931.

JONES, C. J.

This suit was filed in a district court of Dallas county by appellant H. L. Scales, against appellee Myrtle Lindsay, to cancel a contract between the parties, alleged to have been induced by the fraud of appellee. By the terms of the contract, appellee delivered to appellant 121 shares of the par value of $100 each in a corporation styled "Lindsay, Inc." The consideration for this stock was $2,500, $1,000 of which was paid in cash, and the remainder by a note executed by appellant to appellee for the sum of $1,500, payable in installments of $500 each, due respectively 60, 90, and 120 days from the date of the contract, October 21, 1929. As a further consideration, appellant agreed to pay five cents on the manufacture of each wave clasp produced by the company. Appellant also sought to cancel the $1,500 note, and prayed for and secured a temporary writ of injunction prohibiting appellee from disposing of the note. A judgment resulted in favor of appellee, and also awarded to her a recovery on the note. An appeal was duly perfected to this court, and the following states the facts:

Appellee perfected an invention to be used by beauty parlor operators in giving permanent hair waves. An application for a patent had been received and given a serial number by the patent office, but had not been granted at the time of the trial. Appellee organized a corporation to manufacture and sell her invention, which was chartered under the laws of the state of New Mexico, and Roswell, N. M., was named as the location of the principal office. The stock of the corporation consisted of 240 shares, each of the par value of $100, most of which was issued to appellee, and appellee was elected president at the first meeting of the stockholders. The property of the company consisted solely of this patent. About $750 had been expended in securing the material necessary to begin the manufacture of the invention, and a relatively small number of the clasps had been manufactured. Miss Lindsay did not have the necessary capital to manufacture and present to the trade this invention, and attempted to interest others in her invention who were able to furnish such capital.

One C. C. Baker, who had himself perfected an invention, became acquainted with appellee, and with her needs in order to realize on her invention. Baker introduced her to appellant as a man financially able to meet her desire in this respect, and one she might interest in her invention. After a relatively short negotiation, the written contract was entered into between the parties, appellant stipulating that appellee should resign the presidency of the corporation, and that he should be elected president, by a new board of directors to be selected by him. After the contract was drawn up and executed, but before it was delivered, appellant and appellee with others went to Roswell, held another stockholders' meeting, in which appellee resigned as president and director, and appellant was elected in her stead, and, at appellant's instance, Baker was elected vice president, and they became two of the new directors of the company.

A few months after the consummation of the sale of this stock, appellant demanded of appellee a rescission of the contract, repayment of the $1,000, cancellation of the note, and also the payment to him of money he had expended in his efforts to place the invention on the market. He also tendered back to appellee the 121 shares of stock, which was 51 per cent. of the capital stock of the corporation. This rescission was demanded on the claim that all of the material representations made to him by appellee, which induced him to enter into the contract, had proven to be untrue. This demand was refused by appellee, and this suit was instituted on the ground of fraud, and for the purposes above indicated.

The allegations in the petition in respect to the fraud claimed to have been practiced on him are very full, but may be thus epitomized: Appellee falsely represented to him (1) that the corporation had orders from many people for the clasps; (2) that such corporation was doing a very large business; (3) that appellee had personally sold many large orders for such clasps; (4) that such orders were coming in faster than they could possibly be filled; (5) that she had interviewed many prospective purchasers; (6) that she had sold

30 orders in one day, and could have sold more but for her fatigue; (7) that all purchasers were urging quick delivery; (8) that a national association of beauty culturists, at a national convention, had indorsed her invention. It was also alleged that all of these representations were known to be false when made, but that plaintiff believed all of the representations, relied upon each of them, and was thereby induced to enter into the contract and to pay out the said money. The 121 shares of stock were again tendered to appellee.

In her answer, appellee denied all of these allegations in reference to the representations it was alleged she had made, and claimed that the contract was entered into by appellant, after making his own investigation and without any inducing representations on her part. As we understand appellee's answer it cannot be construed as a cross-action against appellant to recover on the $1,500 note, but is entirely a defensive plea, though, in the prayer, such affirmative relief is asked.

The case was tried to a jury and submitted on special issues. No issue was submitted in reference to the note, which was put in evidence, and its existence and execution was not disputed. Three special issues were submitted to the jury on appellant's claim of fraud. These issues are:

"No. 1: Do you find and believe from a preponderance of the evidence that the defendant, Myrtle Lindsay, made any representations to the plaintiff, H. L. Scales, that the Lindsay Incorporated Company was doing a large amount of business? Answer this question, 'Yes' or 'No'. Answer: 'No'.

"No. 2: Do you find and believe from a preponderance of the evidence that the defendant, Myrtle Lindsay, made any representations to the plaintiff Scales that she had taken a great number of orders for clips for the Lindsay Incorporated? Answer this question 'yes' or 'no'. Answer: No.

"No. 3: Do you find and believe from a preponderance of the evidence that the defendant, Myrtle Lindsay, made any representations to the plaintiff Scales that a National Association of Beauty Culturists had endorsed, 'One in All', permanent Wave Clasp of the Lindsay Incorporated Company? Answer this question, 'yes' or 'no'. Answer: No.

"No. 8: What sum of money, if any, if paid now in cash, do you find and believe from a preponderance of the evidence would reasonably compensate the plaintiff Scales for his damages, if any you may find, that he suffered by reason of the representations you may have found to be false? Answer this question as to the amount found by you in Dollars and Cents? Answer: Nothing."

Special issues Nos. 4, 5, 6, and 7 were to be answered only if affirmative answer was given to either of the first three issues. As these issues were each answered in the negative, no verdict was rendered on such other special issues.

Appellant assigns error (1) on the court's refusal to give a number of requested special issues, in the main presenting what is claimed to be other issues of fraud, separate and distinct from those submitted by the court; (2) on refusing to admit certain testimony offered by appellant; (3) on misconduct of two members of the jury, and misconduct, in respect to these jurors, of appellee and two witnesses friendly to her; (4) a claim of fundamental error because of no basis in appellee's pleading for the recovery allowed on the $1,500 note. The grounds of appellant's contentions, made by the respective assignments of error, will appear in the discussion of such assignments.

■■ Appellant produced competent evidence to sustain all of the material issues of fraud alleged by him, and appellee produced competent evidence to sustain her denial that any of these representations were made. The case as to the issue of fraud therefore presents purely a jury question of disputed fact, and, the jury having resolved such contested issue of fact in favor of appellee on competent evidence, this court must accept such finding, and adopt the findings of the jury as the findings of this court on the issue of fraud. It will be noted that the findings of the jury are: (1) That no representation was made that the corporation was doing a large amount of business; (2) that no representation was made that appellee, prior to the contract, had taken a great number of orders for clasps for the corporation; (3) that no representation was made that a national association of beauty culturists had indorsed appellee's invention. Among the special issues requested and refused are those submitting, in substantially the same form, the three issues submitted by the court, and it was not error to refuse such issues.

■ Article 2190 (Rev. St. 1925) at the time of the trial and before the recent amendment, read: "When the court submits a case upon special issues, he shall submit all the issues made by the pleading. Failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless its submission has been requested in writing by the party complaining of the judgment. Upon appeal or writ of error, an issue not submitted and not requested is deemed as found by the court in such manner as to support the judgment if there is evidence to sustain such finding. A claim that the testimony was insufficient to warrant the submission of an issue may be complained of for the first time after verdict."

It is the settled construction of this statute that the trial court should submit only the ultimate controlling issues of fact, made by the pleadings of the parties, and should

not submit subordinate or evidentiary issues which are embraced in, or tend only to establish the fact of, the controlling issues submitted. Freeman v. Galveston, H. & S. A. Ry. Co. (Tex. Com. App.) 285 S. W. 607; McBurnett v. Smith & McCallin (Tex. Civ. App.) 286 S. W. 599; Texas Employers' Ins. Ass'n v. Downing (Tex. Civ. App.) 218 S. W. 112; Frigid Fluid Co. v. Sid Westheimer Co. (Tex. Civ. App.) 189 S. W. 334; Texas City Transportation Co. v. Winters (Tex. Civ. App.) 193 S. W. 366; Manes v. J. I. Case Threshing Co. (Tex. Civ. App.) 204 S. W. 235; Kansas City, M. & O. Ry. Co. v. Estes (Tex. Civ. App.) 203 S. W. 1155; Hicks v. Morgan (Tex. Civ. App.) 259 S. W. 263; Millers' Indemnity Underwriters v. Green (Tex. Civ. App.) 237 S. W. 979; Eastern Texas Elec. Co. v. Kappe (Tex. Civ. App.) 235 S. W. 253; Knight v. Lewis (Tex. Civ. App.) 283 S. W. 542.

We are of the opinion that the other special issues, each of which submits a specific allegation in the petition, are evidentiary, either of special issue No. 1 or special issue No. 2, given by the court, and that it was not error to refuse to submit them. The controlling issues of fact, pleaded by appellant as to fraud, are all comprehended in the three special issues submitted. To illustrate, special issue No. 6, refused, required the jury to determine whether Miss Lindsay had represented that she had secured in one day 30 orders for the Lindsay permanent wave clasps, and could have sold more except for fatigue, is merely evidentiary as to the amount of business it is claimed that she represented the company was doing previous to the contract, and is comprehended in special issue No. 1, submitted by the court. The same thing is true of special issue No. 7, refused, which sought to have the jury pass upon the question of whether appellee had represented to appellant that all of the many people who had ordered Lindsay permanent wave clasps from her were begging for quick delivery. This issue is merely evidentiary of the main fact found by the jury in special issue No. 2. The same is true of other special issues refused by the court and not herein specifically discussed.

Again the evidence of appellant disclosed that, in making the contract, he relied principally, if not entirely, upon the representations contained in the submission of issues Nos. 2 and 3, to wit, that a great many orders were waiting delivery, and that a national convention of beauty culturalists had indorsed the invention. All assignments of error, in respect to the court's refusal to give the requested instructions, are overruled.

Appellant sought to prove by a witness, who had been solicited by appellee to become interested in her invention previous to the contract made with appellant, that she made some of the representations to such witness, in reference to the business of the company, that it was claimed she had made to appellant. Under proper objection, this latter evidence was excluded. We do not think there was error in this ruling. It does not tend to establish false representations, alleged to have been made to A, to show that a similar representation had been made to B, on another occasion. This assignment of error is overruled. It was not error to refuse to permit proof that representations were made, in the application for the charter, that the invention was worth $30,000. This was not relevant to any of the issues in the case.

Error is assigned on misconduct of two of the jurors, appellee and two of appellee's witnesses. It appears from the bill of exception to the court's ruling on this question, on the hearing of appellant's motion for a new trial, that one Lee was in the courtroom listening to the trial; that after the trial was under way, Lee called appellant's attention to the fact that appellee and one of the witnesses were smiling and nodding to two of the jurors, and that the jurors were reciprocating by nodding and smiling to appellee and said witnesses. Appellant then observed the same conduct. This he reported to his attorney after the evidence had closed, and there was a recess so that the court could prepare the charge. The attorney observed that these two jurors remained in the courtroom during this recess, after the other jurors had left, and that such conduct was then carried on between them and another witness, and that appellee and one of the witnesses went to where these jurors were and engaged them in conversation. The attorney then went into the judge's office and reported to him that appellee and a witness had been guilty of smiling and winking at two jurors, and that they had responded in smiles and nods. The court told the attorney that the witness he referred to had winked at him, and, from other language used by the court, the conclusion must be drawn that, in the court's opinion, winking was a habit of said witness. No report was made to the judge of the conversation between the two jurors, appellee, and the witness. The attorney did not ask the court for any affirmative action on the matter presented, and no further action was taken by appellant's attorney, until the return of the verdict, and he had prepared his amended motion for a new trial, in which he assigned error because of the alleged misconduct.

This was conduct that ought not to have taken place and doubtless would have been stopped and parties rebuked if the conduct had been seasonably called to the attention of the court. The two jurors were not identified by name, and it seems no effort of identification in this respect was resorted to, nor were the jurors summoned before the court on hear-

**290**

ing of the motion for a new trial, in order that they might be identified and their testimony taken under oath. When this conduct was known to appellant and his attorney, before the court had read the charge to the jury and before the jury had been permitted to consider the case, appellant had two courses to pursue; he could move for a mistrial and the discharge of the jury because of this misconduct, or he could waive such misconduct, and take his chance with the alleged offending jurors. Anderson Bros. v. Parker Const. Co. et al. (Tex. Civ. App.) 254 S. W. 642; Williams v. Phelps (Tex. Civ. App.) 171 S. W. 1100. Appellant appears to have adopted the latter course, and thereby waived any right he had to object to the alleged misconduct. Appellant having elected to take his chance with the jury, the assignment of error in this respect is overruled.

■ The assignment of error in reference to that portion of the judgment allowing a recovery on the $1,500 note, we think, must be sustained. Appellee had the right to file a cross-action and recover on the note, but, to do so, it required a plea in a cross-action, setting up distinctly such cause of action; or she could merely answer appellant's suit and elect to file a separate suit to recover on the note. In a defensive way only in her answer, appellee alleges that the note for $1,500 was executed by appellant, and we fail to find any pleading that would in any way authorize a judgment in her favor on this note. It is true, that in her prayer she prays for such recovery, but such prayer cannot be considered as any part of the cause of action she is required to allege in order to recover on the note. 21 R. C. L. 489 states the general rule of law in reference to the function of a prayer in a pleading: "While the prayer cannot aid in making out a case otherwise defectively stated in the complaint, it may serve to show what kind of case the plaintiff supposes he has made, and the kind of relief to which he conceives himself to be entitled, and indicate the object which he seeks to accomplish." We are of the opinion that appellee's answer consisted only of defensive matters, and did not allege grounds for the affirmative relief awarded by the judgment. The deficiency in the pleading was not called to the court's attention, either by exception to the pleading or in the motion for a new trial, but is assigned as fundamental error, and has been treated as such error.

It necessarily follows that, in our opinion, the judgment, in so far as it relates to the cause of action alleged by appellant, must be affirmed, and that portion of the judgment which allows recovery in favor of appellee against appellant for the principal, interest, and attorney fee on the $1,500 note, must be reversed, and here rendered in favor of appellant. This latter order, without prejudice

to appellee's right to prosecute an independent suit on the note.

Affirmed in part; reversed and rendered in part.