**TEXAS EMPLOYERS' INS. ASS'N
v. HENTHORN.**

No. 6141.

Court of Civil Appeals of Texas.
Amarillo.

March 26, 1951.

Rehearing Denied May 7, 1951.

Underwood, Wilson, Sutton, Heare & Boyce, Amarillo, for appellant.

John T. Gano, Dallas, for appellee.

LUMPKIN, Justice.

This is a workmen's compensation case. In response to special issues, a jury found that on November 24, 1949, the appellee, E. A. Henthorn, sustained accidental personal injuries while in the course of his employment with Lester A. Jones, the employer. The jury found that these injuries resulted in total and permanent incapacity for a period of 150 weeks, commencing on the day of the accident; and the jury also found that the appellee suffered a 75% partial permanent incapacity, likewise commencing on the day of the accident. Because the jury found that both the total and partial incapacity began on the same day, the appellee waived the findings of the jury on total disability and moved for judgment on partial disability only. On this basis, judgment was rendered in favor of the appellee and against the appellant, Texas Employers' Insurance Association, the compensation insurance carrier, for 300 weeks of compensation at $25 per week, commencing on December 1, 1949. From this judgment, the appellant has regularly prosecuted its appeal.

The parties agree that the principal issues involved in the trial were whether the appellee suffered an accident and, if he did, the extent of his disability.

The appellee was a cable tool dresser. On November 24, 1949, he was working for his employer on a drilling operation in Gray County, Texas. While the appellee, assisted by his helper, James Lester Williams, was dressing a heavy oil-field bit and was setting it in a slack tub, it slipped, threw its weight on the appellee, and in some manner injured the lower part of his back. He suffered stabbing pains in that region of his body. The next day he went to see Dr. Pieratt, who examined him and gave him heat treatment

on his back. This treatment was continued until February, 1950, when he started going to Dr. R. D. Falkenstein, who after an examination sent him to a hospital where the appellee was placed in traction for about twenty days. After he left the hospital, Dr. Falkenstein sent him to see Dr. Earl D. D. McBride, a specialist in Oklahoma City, Oklahoma. In the course of his several visits to Oklahoma City, Dr. McBride examined and X-rayed the appellee's back and finally placed the lower part in a brace. During all this time the appellee's back continued to hurt him, the pain extending down his left leg and into his big toe.

Dr. McBride and Dr. Falkenstein testified for the appellee. The appellant contends that the trial court erred in excluding a certain portion of Dr. McBride's deposition and insists that the court erred in admitting portions of Dr. Falkenstein's testimony. We shall discuss Dr. McBride's testimony first.

Dr. McBride, whose practice is limited to bone and joint surgery, stated that he had examined the appellee on several occasions and that he had recommended a course of treatment to Dr. Falkenstein, the appellee's physician, suggesting that roentgen heat be applied to the patient's back two or three times a week. Dr. McBride testified: "I suggested that if the symptoms should become worse so that his sciatic pain was unbearable, then surgery would be recommended. * * * Again on April 13, 1950, after an examination on that date, I stated that I was still not fully convinced that Mr. Henthorn had a confirmed ruptured intervertebral disc, but there was some indication of nerve root irritation at the lumbo-sacral joint. I advised that since there was some doubt about the definiteness of the diagnosis I would suggest that he wait for a longer period of time before advising surgery. I suggested it was possible that the condition might clear up with conservative treatment. I advised him that I had applied a low back support, and advised him to take it easy, he should not be required to take his exercise too strenuously."

Later, Dr. McBride examined the appellee again. His testimony continues: "I again wrote Dr. Falkenstein on May 30, 1950, that I had examined Mr. Henthorn again on May 26, 1950, and found his symptoms and complaints about the same as on previous occasions. He had constantly complained of the indefinite pain of sciatic nature in the left leg, also had some pain in his right leg of a similar nature, advised him I had not been willing to make a diagnosis of herniated intervertebral disc based on the irregular pattern of his symptoms, but since the symptoms are quite constant, involve numbness to either side of his thigh and calf, and extending into his big toe, it would indicate a definite pattern of nerve root pressure. I explained further that the anterior posterior view shows considerable irregularity between the 4th and 5th lumbar vertebræ; that this indicated structural degeneration of an arthritic nature that might be aggravating his condition. I stated I didn't know of any type of conservative treatment that would improve his condition. I stated I would not definitely recommend surgery but since he had not improved and since he seems to be greatly disabled from returning to work, the only other measure I could possibly think of would be an exploration of the 4th and 5th lumbar and also the 5th lumbar and the first sacral areas in order to determine if there is any nerve root pressure that can be relieved. I advised him that it was my opinion that at this time he has approximately 50 to 60 percent disability of a permanent nature."

The appellee did not introduce the remainder of Dr. McBride's answer. Although the appellant urged its introduction, the court excluded it, and it is to this action of the court that the appellant complains in its first point of error.

The excluded portion of Dr. McBride's answer is as follows: "It is quite likely that his permanent symptoms at some time or other during the next few months might clear up without surgical interference, but with surgical interference if the ruptured or herniated disc were found, and if the last two of the lumbar joints were fused,

it was my opinion he would be greatly relieved and would not be more than 20 percent disabled."

Dr. McBride stated that he had "recommended surgery for exploration to the lumbosacral spine to determine the definite pathology, and to relieve it if present." This statement was not read to the jury. On cross-examination, however, the doctor, without objection, stated that when he saw the appellee in 1950, Henthorn was able to do some forms of physical labor, that it was not his opinion that an operation was definitely needed but that it might be needed, that no time was set for the operation and that it had not been performed. But the court excluded the doctor's statement that after an operation the appellee would suffer total incapacity for three months, followed by an improvement and permanent partial incapacity of 20%.

The appellant contends that the court erred in excluding these particular portions of Dr. McBride's testimony. It insists that Dr. McBride's testimony, when construed in its entirety, warranted the conclusion that the appellee's incapacity was substantially less than the jury found it to be; that because certain portions of the doctor's deposition were excluded, the jury received a misleading impression of Dr. McBride's testimony. We believe it a fair summary of Dr. McBride's testimony to say that after he had reached his diagnosis, he did little more than speculate concerning the appellee's condition if certain events occurred—i. e. if the patient did not improve, if an operation was performed, and if it was discovered that at least two of the lumbar joints were fused.

In order to find that the appellee had suffered a permanent partial disability of no more than 20%, the jury would (under Dr. McBride's testimony) have to infer that the appellee's symptoms would not clear up without surgical interference and then add the further inference that the exploratory operation would reveal a ruptured or herniated disc and would have to infer still further that at least two of the lumbar joints were fused. The admission of the excluded portions of Dr. McBride's deposition would have permitted the jury to draw an inference from speculative testimony and then draw a further inference from that inference. The law does not permit the pyramiding of one assumption upon another because the ultimate finding is too conjectural to support a judgment. The appellant's first point of error is overruled. International Travelers' Ass'n v. Bettis, 120 Tex. 67, 35 S.W.2d 1040; Green v. Texas & P. Ry. Co., 125 Tex. 168, 81 S.W.2d 669; Wells v. Texas & Pac. Coal & Oil Co., 140 Tex. 2, 164 S.W.2d 660.

The appellant's second point of error relates to the admission of a certain portion of Dr. Falkenstein's testimony. After stating that he had examined the appellee, he was asked if Henthorn had given him a history of the case. Before answer was made, the appellant objected on the grounds that since the manner in which the accident occurred was one of the issues in the case, it was not permissible for the appellee to corroborate himself by having the doctor testify to what the appellee had told him. The court overruled the appellant's objection, and the doctor answered the question by saying: "A. Mr. Henthorn told me that he got hurt on the job on November 24th while setting a 6-inch bit. The bit slipped and the entire weight was thrown on Mr. Henthorn and he hurt his back. He has not been able to work since that happened."

The appellant insists that this statement was hearsay and self-serving in character. However, some of this testimony was admissible. The appellee's answer, made in response to inquiries by his physician in connection with the diagnosis of his ailment and the proposed treatment, directed Dr. Falkenstein's attention to the appellee's back, the portion of his body which he claimed was injured and hurting. In the case of Walker v. Great Atlantic & Pacific Tea Co., 131 Tex. 57, 112 S.W.2d 170, 172, the Supreme Court said:

"It is stated in 67 A.L.R. p. 18: 'It is generally, though not universally, held that statements by an injured or diseased person to a physician as to past matters, while not admissible as evidence of the facts stated, may be testified to by the physician to show the basis of his opinion.'

"A multitude of cases are cited in support of this. There are important exceptions to this, as: (1) When made to a physician to enable him to testify, * * * (2) or when they relate to the disputed issue of how the injury occurred."

As can be seen, however, Dr. Falkenstein's statement reveals that the appellee, in response to his physician's question, went further than merely directing attention to his back. His answer went into some of the details of the accident. He stated that it had occurred on November 24 while appellee was setting a 6-inch bit. This portion of the doctor's testimony corroborates the appellee's theory of the accident and contradicts the appellant's denial of the accident. The appellee's statement to Dr. Falkenstein was not part of the res gestae. There is conflict in the testimony as to the manner in which the alleged accident occurred. Appellee testified that he was injured by the weight of the 6-inch bit falling on him. His helper, Williams, testified that he knew nothing of the accident. Another fellow workman, Smith, stated that soon after the time the accident is alleged to have occurred he heard the appellee say he had hurt his back.

 Possibly, if, upon request, the court had instructed the jury not to consider this portion of the doctor's testimony in so far as it relates to the disputed issue of how the alleged accident occurred, no error would exist. Highway Ins. Underwriters v. Spradlin, Tex.Civ.App., 190 S. W.2d 181, writ ref. w. m. Rule 434, Texas Rules of Civil Procedure, provides that no judgment shall be reversed unless the error complained of probably caused the rendition of an improper judgment This rule has enlarged the doctrine of harmless error so as to cast upon the complaining party the burden of showing at least that error probably resulted to his prejudice. In our opinion, the error complained of did not cause an improper judgment. The doctor's answer is not shown to have influenced the jury in answering the issue as to whether the appellee suffered an injury to his back on November 24, 1949. Dr. Falkenstein's testimony was merely cumulative of evidence already admitted; the

jury's finding is supported by other substantial evidence. No one denied that the appellee was working for Jones on the day of the alleged accident. He did dress an oil field bit that day, and within a short time after being hurt he did mention the fact to his fellow workman, Smith, Three physicians testified that the appellee was suffering from an injured back. Their testimony is uncontradicted. The admission of this portion of Dr. Falkenstein's testimony probably did not cause the jury to return a verdict different from what otherwise might have been returned, and the appellant apparently suffered no injury by reason of this portion of Dr. Falkenstein's testimony. United Employers Casualty Co. v. Marr, Tex.Civ.App., 144 S.W.2d 973, err. dism. jud. cor; Leyendecker v. Harlow, Tex.Civ.App., 189 S.W.2d 706, writ ref. w. m.; Ligon v. Green, Tex.Civ.App., 206 S.W.2d 629.

The appellant contends that since the issue of whether the accident occurred in the manner claimed by the appellee is closely contested, the court erred in failing to require the jury to find if the particular accident actually did take place.

In response to special issues, the jury found that on November 24, 1949, the appellee sustained personal injuries to his back; that the injuries resulted from an accident; that they were sustained by the appellee while working for Lester A. Jones and while in the course of his employment with Jones; and that such injuries naturally resulted in his incapacity to work.

██ The appellant requested an issue inquiring whether the bit slipped or rolled while the appellee and Williams were attempting to place it upright in the slack tub; and, if the jury answered in the affirmative, then the appellant wanted the jury to answer the question whether the appellee suffered an injury to his back as a result of the bit slipping or rolling. The court overruled the requested issue, and it is to this action of the court that the appellant complains in the third point of error. Our courts have held that only substantial and ultimate issues of fact are required to be submitted to a jury. Incidental, subordinate or evidentiary ques-

tions which are embraced in, or tend only to establish the fact of, the controlling ultimate issues need not be submitted. Southern Surety Co. v. Adams, 119 Tex. 489, 34 S.W.2d 789, 797; Scales v. Lindsay, Tex.Civ.App., 43 S.W.2d 286. In our opinion the special issue requested by the appellant was evidentiary in nature. It inquired of the jury the details of the alleged accident. Special Issue No. 1 inquired of the jury whether the appellee had sustained personal injuries to his back on a certain date. It did not inquire merely whether he had sustained personal injuries on that date. The issue conforms to the pleading and the evidence. Rule 279, Texas Rules of Civil Procedure; Hamill & Smith v. Parr, Tex.Civ.App., 173 S.W.2d 725, writ ref. w. m.; Gulf Casualty Co. v. Tucker, Tex.Civ.App., 201 S.W.2d 81; Traders & General Ins. Co. v. Jenkins, 135 Tex. 232, 141 S.W.2d 312; Employers' Liability Assurance Corporation, Limited v. Young, 146 Tex. 168, 204 S.W.2d 833.

In its fourth point of error the appellant complains that Special Issue No. 13 placed an improper burden of proof upon the appellant. The issue reads as follows:

"Do you find from a preponderance of the evidence that such partial incapacity, if any, was, or is, permanent or temporary?

"Answer either 'Permanent' or 'Temporary.'

"If you have answered Special Issue No. 13 by 'Temporary,' and in that event only, then answer Special Issue No. 14, as follows:

"Special Issue No. 14.

"From a preponderance of the evidence, how long do you find such partial incapacity, if any, has continued, or will continue, from the date of the commencement, if you have so found it did, or will commence?

"Answer in weeks, if any."

 To Special Issue No. 13 the jury answered, "Permanent," and having so answered, the jury did not answer Special Issue No. 14. The appellant insists that if the disjunctive manner of submission is used by submitting the inquiry of permanent and temporary in the same issue, as authorized by Rule 277, the court should charge that the jury shall answer "temporary" unless they find from a preponderance of the evidence that such incapacity is not temporary. This character of instruction, the appellant argues, places upon the appellee his proper burden of proving that his incapacity is permanent and not temporary.

The appellant's contention is answered in the case of Texas Employers' Ins. Ass'n v. Mallard, Tex.Civ.App., 192 S.W.2d 302, 304, wherein the court said: "In its sixth point appellant complains that such submission imposed on it the burden of proving appellee's incapacity was temporary, instead of placing on appellee the burden of proving that his disability was not temporary. By Rule 277, Texas Rules of Civil Procedure, the court is expressly authorized in a workmen's compensation case to submit in one question whether the injured employee is permanently or only temporarily disabled. See Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W.2d 314. As we understand appellant's contention, it would distinguish the Wright case from the instant case by reason of the fact that there the injured workman had expressly sought to recover for temporary incapacity, whereas here appellee has not (in terms) sought such recovery. However, it is well settled that allegations of total and permanent disability will authorize a recovery for a lesser incapacity, both as to extent and duration. Texas Emp[loyers'] Ins. Ass'n v. Drayton, Tex. Civ.App., 173 S.W.2d 782, writ refused. See also Commercial Standard Ins. Co. v. Brock, Tex.Civ.App., 167 S.W.2d 281."

The jury found in answer to Special Issue No. 5 that the injuries sustained by the appellee naturally resulted in his incapacity to work for a length of time. In answer to Special Issue No. 10 the jury found that the appellee's incapacity for work was partial, and in reply to Special Issue No. 11 the jury placed the appellee's partial incapacity at 75%. In response to Special Issue No. 12 the jury found that the appellee's partial incapacity began on November 24, 1949, and in answer to

Special Issue No. 13, as we have seen, the jury found the partial incapacity permanent. Considering all of these special issues together, we have concluded that they fairly submitted to the jury the question of the degree and duration of the claimant's incapacity. Southern Underwriters v. Schoolcraft, 138 Tex. 323, 158 S.W.2d 991.

The record in this case fails to reveal reversible error. For this reason the appellant's points of error are overruled, and we affirm the judgment of the trial court.