**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Appellant,**

v.

**Anacleto ESCALERA, Appellee.**

**No. 14288.**

Court of Civil Appeals of Texas.

San Antonio.

Nov. 25, 1964.

Rehearing Denied Dec. 30, 1964.

Clemens, Knight, Weiss & Spencer, San Antonio, for appellant.

Rudy Rice, Peter N. Plumb, San Antonio, for appellee.

MURRAY, Chief Justice.

This is a workmen's compensation case which was tried to a jury and resulted in judgment for total and permanent disability. Anacleto Escalera is the injured employee, Union Stock Yards, the employer, and St. Paul Fire & Marine Insurance Company, the insurance carrier. This appeal is by the insurance carrier.

■ Appellant's first complaint is that the trial court erred in overruling appellant's objections to Special Issue No. 18. This issue related to whether or not the Union Stock Yards, through its agents or representatives, received notice of Escalera's accidental injury of May 11, 1961, if any, within thirty days from May 11, 1961. The jury answered "Yes". Appellant's objections were:

"To Special Issue No. 18 because it omits an identification of the injury described in the Plaintiff's notice and claim to the Industrial Accident Board and his petition in this suit.

"Defendant objects to Special Issue No. 18 because it is erroneous in failing to add, after the words 'accidental injury', 'lifting a pen gate to close it', because the issue as now submitted would allow the jury to give an affirmative answer based on evidence of the recurrence of back trouble which the employer did know of, rather than the accident described in the Industrial Accident Board's notice and claim and Plaintiff's petition."

Appellee's claim, filed with the Industrial Accident Board on September 6, 1961, and his petition, alleged an injury on May 11, 1961, when "he was penning cattle & was trying to get a dragging pen gate to close; as he lifted the pen gate to close it in a hurry, he injured his back, neck, legs, head & body generally, & this injury aggravated, accelerated, precipitated, incited a previous condition in his back which he had on or about December 17, 1957, when he injured his back, neck, head, & body generally by falling from a boxcar onto a concrete ramp while unloading the boxcar." Appellant denied that it, or appellee's employer, had any notice of accidental injury in the course of employment within thirty days of May 11, 1961, and further denied any claim for compensation had been filed with the In-

dustrial Accident Board concerning the December 17, 1957, accident within six months thereafter. Appellee testified that he guessed he notified his foreman, J. M. Thompson, of hurting his back on the gate. J. M. Thompson testified that appellee, in the spring of 1961, told him his back was bothering him from an old injury but did not tell him he hurt his back lifting or closing a gate. Dan Crutchfield, yard manager at Union Stock Yards, testified that he was in charge of reports of on-the-job accidental injuries at the stock yards. As to any trouble appellee had in May, 1961, Crutchfield stated "It was reported to me that he had trouble straightening up after stooping over, and needed assistance or something." It was never reported to Crutchfield that appellee hurt his back closing a gate.

Dr. Waldo S. Luedemann testified he was Company doctor for Union Stock Yards and first treated appellee for the injury of December 17, 1957, when Escalera fell, striking his lower back on the edge of a dock. In April, 1960, Dr. Luedemann saw appellee for pain in his back—"he stated he had experienced pain in the back from time to time ever since his original injury." Dr. Leudemann saw him on May 12, 1961, and recorded at the time: "Chief complaint, severe back pain. Present illness recurring back pain. While taking a shower at the stock yards, couldn't straighten up. My examination was incomplete at that time because he had a lot of severe muscle spasm in his lower back and was unable to straighten up, and I gave him some tablets for pain, told him to sleep on a board and apply moist heat and return in three days for examination."

The trial court submitted the following special issue on the notice question:

"Question No. 18: Do you find from a preponderance of the evidence that Union Stock Yards, through its agents or representatives, received notice of A. Escalera's accidental injury of May 11, 1961, if any, within 30 days from May 11, 1961?"

The trial court overruled appellant's objections to this issue and appellant contends that this action of the trial court was reversible error. We do not agree. Sec. 4a of Art. 8307, Vernon's Ann.Civ. Stats., provides in part as follows: "Unless the Association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the Association or subscriber within thirty (30) days after the happening of an injury or the first distinct manifestation of an occupational disease, and unless a claim for compensation with respect to such injury shall have been made within six (6) months after the occurrence of the injury * * *." Appellant contends that there were three possibilities: first, the jury might have thought that Issue No. 18 related to the return of pain from a former back injury, or the inability to straighten up after taking a shower, or to the injury while lifting the pen gate. The simple returning of pain from a former back injury, or claimant's inability to straighten up after taking a shower were not injuries, the only injury alleged was received while lifting a pen gate. The jury had already found that appellee had sustained an injury on May 11, 1961, and that it was an accidental injury. The term "accidental" and "injury" had been fully defined by the court, and from the pleadings and the evidence, the jury, no doubt, understood that the entire lawsuit was based upon the alleged injury occasioned by the lifting of the pen gate. Southern Underwriters v. Boswell, 138 Tex. 255, 158 S.W.2d 280; Texas Employers Ins. Ass'n v. Henthorn, Tex.Civ. App., 240 S.W.2d 392.

Appellant next contends that the trial court committed reversible error in overruling appellant's motion in limine re-

questing that the number and amount of compensation payments recoverable under the workmen's compensation law not be referred to before the jury. We overrule this contention. Before the overruling of this motion in limine could constitute reversible error at least two things must happen; first, the matter sought to be suppressed must arise during the trial, and the party who originally urged the motion in limine must make timely objection. In the case at bar appellee did ask Dr. Leudemann the question, "and you likewise know that the maximum amount that a person can get is 401 weeks at $35.00 a week, you know that don't you?" to which the doctor answered, without any objection, in effect "No." Thus the overruling of the motion in limine to suppress did not constitute reversible error. Hartford Accident & Ind. Co. v. McCardell, 369 S.W.2d 331 (Tex.1963).

■ Appellant next contends that the trial court committed reversible error in overruling its motion for a new trial because appellee's attorney repeatedly stated to the jury that appellee could only recover "limited compensation" and that the maximum recovery was for only 401 weeks, thereby seeking to induce the jury to make findings of total permanent incapacity in order to recover such "limited compensation." Appellee contends that these matters were in evidence and therefore properly commented upon, but in this he is mistaken. The mere asking of a question which is answered "No" does not establish any fact. Attorney in his argument referred to the limited compensation that could be recovered by appellee, and that he could only recover 60% of $35.00 for 401 weeks. The first time such argument was made the trial judge sustained appellant's objection, and the second time the trial court not only sustained appellant's objection to the re-

marks but instructed the jury not to consider them. We are unable to say from the entire record that these remarks and arguments to the jury were of such harmful nature as to require a reversal of the judgment, especially in view of the fact that the trial judge instructed the jury not to consider those remarks. St. Paul Fire & Marine Ins. Co. v. Foster, Tex.Civ.App., 375 S.W.2d 355; Traders & General Ins. Co. v. Smith, Tex.Civ.App., 311 S.W.2d 91; Texas Emp. Ins. Ass'n v. Logsdon, Tex.Civ.App., 278 S.W.2d 893.

■ By its fourth, fifth and sixth points appellant contends that the evidence is insufficient to support the jury's finding that appellee was totally and permanently incapacitated beginning May 12, 1961. Appellee originally filed two suits, one based upon the gate lifting incident on May 11, 1961, and the other on a "cow butting incident" in October, 1962. These two suits were consolidated and tried as one suit. There were conflicting allegations, which resulted in appellee's abandoning the "cow butting incident" and relying entirely upon the gate lifting incident. When appellee injured his back in lifting the gate he quit work for some four days and then returned to work. He had a large family and said it was necessary for him to work even though he was suffering with great pain in his back. He often worked overtime. After the "cow butting incident" he quit work and has never worked since. There were three doctors who testified in this case, as well as several lay witnesses. There were conflicts and contradictions in the testimony, and it was the duty of the jury to consider these conflicts and contradictions and determine what facts had been established. We have examined the evidence and find it sufficient to support the findings of the jury.

The judgment is affirmed.