Mrs. Isaac Clarence COLLINS, Jr., et al., Appellants,

v.

D. C. COLLINS et al., Appellees.

No. 14936.

Court of Civil Appeals of Texas, San Antonio.

Feb. 24, 1971.

Rehearing Denied March 31, 1971.

A. W. Worthy, Boyle, Wheeler, Gresham, Davis & Gregory, San Antonio, for appellants.

Pat Maloney, San Antonio, for appellees.

BARROW, Chief Justice.

A will contest. Appellants, Mrs. Isaac Clarence Collins, Jr., Maude Smith, and Elsie Joshua, three devisees of an instrument dated February 9, 1967, executed by deceased, Isaac Clarence Collins, Jr., seek, by petition for writ of error, to review a judgment of the district court entered on a jury verdict denying probate of such instrument as the last will and testament of testator.

Appellees, D. C. Collins and Bettye Collins Childs Allen, an illegitimate son and adopted daughter of testator, who are hereinafter referred to as contestants, have filed a motion to dismiss such petition for want of jurisdiction and urge that appellants participated in the trial of the case through Gene Toscano, Esq., their attorney, and therefore are not entitled to file a writ of error. See Article 2249a, Vernon's Annotated Civil Statutes.[1] In considering this motion, it is necessary to review the pertinent procedural background of this matter.

On December 23, 1968, Willie Mae Duncan, hereinafter referred to as proponent, filed application, as independent executrix, to probate the instrument. Clarence McGowan, Esq. prepared and filed such application as attorney for proponent. A contest was duly filed by contestants, wherein it was urged that testator did not have testamentary capacity at the time such instrument was executed, and that same was the product of undue influence. Such instrument devised $1.00 to each of contestants and substantial specific bequests to the surviving widow, whom he had mar-

---

1. "No party who participates either in person or by his attorney in the actual trial of the case in the trial court shall be entitled to review by the Court of Civil Appeals through means of writ of error."

ried on June 3, 1965, after the death of his first wife on September 21, 1964. All the rest and residue of his estate was devised to testator's four sisters, namely: Maude Smith, Elsie Joshua, Nettie Harris, and Willie Mae Duncan. Attorney McGowan had a written contract of employment with proponent and employed Attorney Toscano to assist him as authorized by said contract.

Only Mrs. Duncan as proponent and contestants were named as parties in either the probate or district court proceedings. The judgment of the district court as well as the statement of facts in the district court both reflect that only these three persons appeared and participated in the trial. Mrs. Harris died just prior to the district court trial. Under the uncontradicted evidence, Mrs. Smith broke her hip about two weeks before such trial, and was bed ridden at home during the trial. However, both Mrs. Collins and Mrs. Joshua were physically present during the trial of the case in the district court. A statement filed herein by the trial judge states that he was assured by Attorney Toscano before starting the case that Toscano actually represented all five of the major devisees, and they were all present and ready to proceed. This representation was made in chambers and was not made a part of the record as required by Rule 11, Texas Rules of Civil Procedure. Unquestionably, the full sympathies as well as the legal positions of Mrs. Collins and Mrs. Joshua were allied with the proponent, although there is no showing that either had employed Mr. Toscano or Mr. McGowan. The attorney who now represents the three appellants filed and urged a motion for new trial on behalf of proponent, but did not perfect her appeal.

A very similar question was raised in Specia v. Specia, 292 S.W.2d 818 (Tex.Civ. App.—San Antonio 1956, writ ref'd n. r. e.). The executor did not perfect his appeal, but a beneficiary under the will timely filed his petition for writ of error. The question was raised as to whether he had participated in the trial so as to bar his review by writ of error. It was there held that such beneficiary under the will had not participated in the trial where he had filed no pleadings, although he had complete knowledge of the suit and in fact, had sat in the courtroom during all of the trial. See also Robertson v. Blackwell Zinc Company, Inc., 390 S.W.2d 472 (Tex.1965); Cooper v. Liverman, 406 S.W.2d 927 (Tex.Civ.App.—Texarkana 1966, no writ).

■■■ We conclude that appellants did not participate in the trial of the case and are entitled to review this judgment by the petition for writ of error which was timely filed herein. It is settled that, where available, writ of error affords a review of the same scope as an appeal. Gunn v. Cavanaugh, 391 S.W.2d 723 (Tex.1965); Appeal and Error—Civil, 3 Tex.Jur.2d, Section 11; Appellate Procedure in Texas, Section 5.1 (1964). Any error in the judgment must be disclosed by the papers on file. Mullen v. Roberts, 423 S.W.2d 576 (Tex.1968); McEwen v. Harrison, 162 Tex. 125, 345 S.W.2d 706 (1961).

Appellants urge eighteen assignments of error. Twelve points complain of the improper admission or exclusion of evidence. Three assert that there is no evidence or, in the alternative, insufficient evidence to support the findings of undue influence or lack of testamentary capacity.[2] One point urges that D. C. Collins was not a proper party, and that the trial court erred in over-

2. The jury found:
  1. Testator did not have testamentary capacity at the time he signed and executed the instrument dated February 9, 1967.
  2. Testator signed and executed such instrument as a result of undue influence exerted upon him by Willie Mae Duncan.
  3. That such instrument had not been revoked by testator at the time of his death.
  4. Testator did not sign such instrument prior to the witnesses signing same.

ruling the motion in limine to strike him as a party. One point complains that appellants were prejudiced by the submission of Question Number 4 inquiring as to whether testator signed the instrument before the witnesses. The final point urges that if we find that appellants participated in the trial, the court erred in not granting their motion for judgment nunc pro tunc to so reflect.

Testator died on December 13, 1968, at the age of 73 years. At the time of his death, and for many years prior thereto, he had owned and successfully operated, at least nominally, a funeral home in San Antonio. In June of 1964, he was charged by information in the U. S. District Court with income tax evasion for the years 1957 and 1958. Although he pleaded guilty to such charge on June 25, 1964, the charge was subsequently dismissed on January 25, 1966, on motion of the United States Attorney after two psychiatric examinations at Wilford Hall U. S. Air Force Hospital, as shown by reports of the examining doctor dated August 14, 1964, and November 30, 1965.

Appellants' first point complains of the admission into evidence of Contestants' Ex. N, being a certified copy of the order of dismissal and certain documents attached thereto; namely a letter from the Chief, Criminal Section of the Department of Justice, to the District Attorney for the Western District and two letters from Martin B. Giffen, Colonel, USAF, MC, setting forth his reports based on said examinations including Colonel Giffen's diagnosis and conclusions. The second point relates to Contestants' Ex. F, which contains testator's medical file at Wilford Hall Hospital. In this connection, appellants concede that the reports of tests made at the hospital were admissible, but complain of other matters in the hospital file, such as copies of the foregoing reports of Dr. Giffen, a letter from the U. S. Attorney setting forth a history of the case, a copy of the information against testator, a copy of the order for examination as well as statements as to the alleged prior medical history of the deceased. Appellants' third point complains of repeated statements by contestants' attorney during examination of various witnesses that testator had been indicted in the Federal Court for income tax evasion, and the charge dismissed after he was found mentally incompetent.

Much of this evidence would have been improper if timely objection had been raised thereto. In Loper v. Andrews, 404 S.W.2d 300 (Tex.1966), the Supreme Court construed Article 3737e, V.A.C.S., as permitting the admission of the diagnosis or medical opinion of a doctor, contained in a proper hospital record, only where the diagnosis *records a condition resting in reasonable medical certainty.* It cannot be said that an opinion relating to mental incompetency would meet such a test. Furthermore, we can see no basis for admitting the correspondence between the attorneys in the Department of Justice, which includes an erroneous assumption that there had been a "Court's finding that this 68 year old defendant is mentally incompetent; * * *."

We cannot say, however, that error has been properly preserved. Proponent filed her Second Amended Motion in Limine several months before the case went to trial, wherein it was urged that the matters relating to the income tax evasion charge were too remote. Further, she pointed out therein that the medical reports of July 29, 1964, and November 25, 1965, contained a diagnosis of a condition not resting in reasonable medical certainty. Such motion was presented to the Presiding Judge of the Bexar County District Courts, who deferred consideration of the motion until the case went to trial on the merits. The case went to trial on December 1, 1969, before another judge. The statement of facts reveals that sometime on December 2, 1969, the trial court stated for the record the motion in limine was granted insofar as it concerned letters made by persons outside the hospital personnel; but that the hospital records made by the representatives of the hospital would be admitted. Proponent

specifically excepted to admission of the narrative reports by Dr. Giffen, as well as to the admission of the Federal Court records. Nevertheless, the entire files went to the jury without specific complaint by proponent that the Court's limitation had been exceeded.

It is settled law that a judgment will not be reversed for overruling a motion in limine unless the questions were in fact subsequently asked or offered. If they were, in fact, asked or offered, an objection made at the time is necessary to preserve the right to complain on appeal that such questions asked or such evidence tendered were so prejudicial that the mere asking or tendering should require a reversal. Hartford Accident and Indemnity Co. v. McCardell, 369 S.W.2d 331, 335 (Tex.1963); St. Paul Fire & Marine Insurance Co. v. Escalera, 385 S.W.2d 477 (Tex.Civ.App.— San Antonio 1964, writ ref'd n. r. e.).

Here the admission of such improper evidence was waived by proponent's repeated failure to object and, in fact, much of same was invited by proponent's examination of her own witnesses regarding the psychiatric examinations and the income tax evasion charge. Eleven of the sixteen witnesses called by proponent were cross-examined by contestants' attorney, without objection, regarding said witnesses' knowledge or even lack of knowledge of these matters. Proponent called Dr. Giffen as her witness and on direct examination, inquired into the examinations made by him at the request of the Federal Court, including inquiry as to Dr. Giffen's diagnosis as a result of such examinations. A substantial part of this lengthy record related to the dismissal of the income tax evasion charge, and proponent's first objection did not occur until Ex. F was offered by contestants on the third day of the trial. The admission of such evidence without objection did not constitute error. Hartford Accident and Indemnity Co. v. McCardell, supra. Appellants' points 1–3 are overruled.

It is clear that the overall effect of such evidence was to convince the jury that the United States District Court had found testator mentally incompetent in January, 1966. Contestants' attorney repeatedly made such assertion in his examination of various witnesses. For example, during the cross-examination of proponent's witness, William G. Brown, Esq., who had prepared the instrument in question, said attorney inquired if Brown had talked to Judge Adrian Spears, "Who pronounced him mentally incompetent?" Similar statements were made by contestants' attorney throughout the trial. This erroneous assertion was obviously very damaging in view of the testimony from Dr. Giffen that testator's condition was probably progressive. Furthermore, the record is clear that at least the physical condition of the aged testator was deteriorating.

[7] Nevertheless, the trial court refused to permit proponent's rebuttal witness, R. E. Pugh, who was identified as the Chief of the Mental Health Department of Bexar County, to testify as to his search of the records of an adjudication of mental incompetency of testator. The trial court sustained contestants' objection as follows: "Judge, we object to this because it is not relevant, it is not material, Judge. All we say, there is a Federal adjudication of incompetency, we said that; now we have proven it." Proponent's counsel urged to the court that Texas law provided how a person was adjudicated, and he wanted the custodian of the records to testify as to such records. By bill of exception, it was shown that Mr. Pugh would have testified that based on his search of the pertinent records, there was no adjudication of mental insanity of testator from 1955 to date of trial. Appellants now urge error in excluding this testimony.

Article 5547–1 et seq., V.A.C.S., provides the procedure in this State for an adjudication of mental incompetency. Article 3731a, Sections 5 and 6, supra, provide for the admission of negative evidence of an official record after diligent search by the

custodian thereof. The materiality of this evidence cannot be questioned. Before this evidence was offered by proponent, contestants had raised a substantial question as to whether or not testator had been adjudicated mentally incompetent. The tendered witness was shown to be the proper custodian of the mental health records of Bexar County where testator had resided at all times in controversy. We sustain appellants' point that the trial court erred in not admitting this evidence.

It still must be determined from the entire record whether the exclusion of such negative evidence was prejudicial. See 1 McCormick & Ray, Texas Evidence § 794 (2d ed. 1956). Here the trial court not only excluded such evidence, but in doing so, sustained contestants' objection which included a statement that there had actually been a Federal adjudication of mental incompetency. The court thereby conveyed to the jury the erroneous impression that testator had been so adjudicated. The thrust of contestants' case was that after the death of testator's first wife in 1964, his physical and mental condition deteriorated to where proponent's will dominated that of testator. In this connection, the court erroneously excluded testator's prior will, which was executed in 1962, although such will had made a similar bequest of $1.00 to each of contestants.[3] It is seen that the crux of the contest was the mental condition of testator from 1964 until the instrument was executed by him on February 9, 1967. The Federal Court's action was mentioned by contestants' attorney in the course of virtually every witness's testimony. It thus became vital that proponent show the jury conclusively that testator had not been so adjudicated. We conclude from an examination of the entire record herein that the court's error in excluding the testimony of Mr. Pugh was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Accordingly, the judgment of the trial court must be reversed and the cause

remanded for a new trial. Rule 434, Texas Rules of Civil Procedure.

In view of a remand of the case, it is unnecessary to consider appellants' other points in that such points, if sustained, would require only a remand, and it is unlikely that these same matters will be presented again in the same form as occurred at the first trial.

The judgment of the trial court is reversed and the cause remanded for a new trial.

3. The attorney who drafted the second will testified that the first will made such a provision.